1  John L. Smaha, Esq.        Bar No. 95855
   Gustavo E. Bravo, Esq. Bar No. 218752
2  **SMAHA LAW GROUP**
   7860 Mission Center Court, Suite 100
3  San Diego, California 92108
   Telephone:    (619) 688-1557
4  Facsimile:    (619) 688-1558

5  Attorneys for Debtor, Sargent Ranch, LLC

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10  In re                              CASE NO. 10-00046-PB11

11  SARGENT RANCH, LLC,                Chapter 11

12
                         Debtor.      **DEBTOR'S PLAN OF**
13                                     **REORGANIZATION DATED**
                                       **SEPTEMBER 22, 2010**
14

15

16

17

18

19
    W:\Sargent Ranch\Plan and D.S\Caption.wpd
20

21

22

23

24

25

26

27

28

---

**DEBTOR'S PLAN OF REORGANIZATION DATED SEPTEMBER 22, 2010**

# TABLE OF CONTENTS

Page

SECTION 1. DEFINITIONS AND INTERPRETATION . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.      Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.      Interpretation; Application of Definitions and Rules of Construction. . . . . . . . . . . 7

SECTION 2. ADMINISTRATIVE EXPENSE CLAIMS AND FEE CLAIMS . . . . . . . . . . . . . . . 7

    2.1    Administrative Expense Claims in General . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    2.2    Bar Date for Administrative Expense Claims. . . . . . . . . . . . . . . . . . . . . . . . .
    2.3    Fee Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

SECTION 3. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS . . . . . . . . . . . . . . . 8

SECTION 4. TREATMENT OF CLAIMS AND EQUITY INTERESTS . . . . . . . . . . . . . . . . . . . 8

    4.1    Secured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    4.2    Priority Claims (Class 5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    4.3    General Unsecured Claims (Class 6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    4.4    Subordinated Unsecured Claims (Class 7) . . . . . . . . . . . . . . . . . . . . . . . . . 10
    4.5    Claims of Wayne F. Pierce (Class 8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    4.6    Equity Interests (Class 9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    4.7    Promissory Note Treatment At End of Plan . . . . . . . . . . . . . . . . . . . . . . . . 11

SECTION 5. MEANS FOR IMPLEMENTATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    5.1    Property Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    5.2    Business Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    5.3    Post-Confirmation Funding and Operations . . . . . . . . . . . . . . . . . . . . . . . . 19
    5.4    Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    5.3    Post-Confirmation Funding and Operations . . . . . . . . . . . . . . . . . . . . . . . . 19
    5.4    Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    5.5    Plan Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    5.6    Corporate Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    5.7    Continued Existence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    5.8    Avoidance Actions, Objections and Collections . . . . . . . . . . . . . . . . . . . . . 21
    5.9    Compromise of Controversies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    5.10   Approval of Plan Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    5.11   Liquidation of Sargent Ranch Property . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    5.12   Distribution of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    5.13   Cancellation of Deeds of Trust and Other Secured Interests . . . . . . . . . . . . . . 23

SECTION 6. DISTRIBUTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

6.1    Satisfaction of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
6.2    Manner of Payment Under Plan . . . . . . . . . . . . . . . . . . . . . . . 23
6.3    Exemption from Securities Laws . . . . . . . . . . . . . . . . . . . . . . . 23
6.4    Setoffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
6.5    Special Tax Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

SECTION 7. PROCEDURES FOR DISPUTED CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . 24

7.1    Objections to Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
7.2    Payments and Distributions with Respect to Disputed Claims . . . . . . . . . . . 24

SECTION 8. EXECUTORY CONTRACTS AND UNEXPIRED LEASES . . . . . . . . . . . . . . . . . 24

8.1    General Treatment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
8.2    Cure of Defaults . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
8.3    Rejection Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

SECTION 9. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE . . . . . . . . . . . . . . . . . 25

9.1    Conditions Precedent to Confirmation . . . . . . . . . . . . . . . . . . . . . 25
9.2    Conditions Precedent to the Effective Date . . . . . . . . . . . . . . . . . . . 25
9.3    Waiver of Conditions Precedent . . . . . . . . . . . . . . . . . . . . . . . . 26
9.4    Effect of Failure of Conditions . . . . . . . . . . . . . . . . . . . . . . . . 26

SECTION 10. DEFAULT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

10.1   Secured Creditors & Unsecured Creditors in Classes 1, 2, 3, 4, 6 and 7 . . . . . . . . . 26
10.2   Priority Claims, Including Priority Tax Claims . . . . . . . . . . . . . . . . . . 27

SECTION 11. EFFECT OF CONFIRMATION 10.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

11.1   Vesting of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
11.2   Discharge of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
11.3   Discharge of the Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
11.4   Term of Injunctions or Stays . . . . . . . . . . . . . . . . . . . . . . . . . . 27
11.5   Injunction Against Interference With Plan . . . . . . . . . . . . . . . . . . . . 28
11.6   Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
11.7   Retention of Causes of Action/Reservation of Rights . . . . . . . . . . . . . . . 28

SECTION 12. PLAN TRUST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

12.1   Creation of Plan Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
12.2   Grant of Promissory Note and Deed of Trust . . . . . . . . . . . . . . . . . . . 29
12.3   Limitation of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

SECTION 13.   RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . 29

SECTION 14. MISCELLANEOUS PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    14.1    Termination or Retention of Professionals . . . . . . . . . . . . . . . . . . . . . . . . . 30
    14.2    Substantial Consummation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    14.3    U.S. Trustee Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    14.4    Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    14.5    Revocation or Withdrawal of this Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    14.6    Cramdown . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    14.7    Confirmation Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    14.8    Severability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    14.9    File Destruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    14.10   Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    14.11   Section 1125(e) of the Bankruptcy Code . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    14.12   Expedited Determination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    14.13   Time Bar to Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    14.14   Fractional Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    14.15   Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    14.16   Waiver of Bankruptcy Rule 7062 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    14.17   Compliance with Tax Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    14.18   Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    14.19   Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    14.20   Binding Effect . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

In re:                                        *

SARGENT RANCH, LLC              *          Case No. 10-00046-PB11
                                              (Chapter 11)
                                              *
        Debtor.                        *
*          *     *     *        *      *        *     *      *      *       *

## DEBTOR'S PLAN OF REORGANIZATION

## DATED SEPTEMBER 22, 2010

        Sargent Ranch, LLC, Debtor and Debtor-in-Possession, proposes the following Plan of Reorganization pursuant to Section 1121(a) of Title 11 of the United States Code:

SECTION 1. DEFINITIONS AND INTERPRETATION

### A.     Definitions

        1.1     The following terms shall have the respective meanings set forth below (such meanings to be equally applicable to both the singular and plural):

        1.2     **Administrative Bar Date** means the date specified in Section 2.2 of this Plan, or such other date as may be fixed by order of the Bankruptcy Court, by which an Administrative Expense Claim must be filed, or be forever barred from asserting such Administrative Expense Claim against the Debtor, the Estate, the Plan Trust or the Reorganized Debtor or their property.

        1.3     **Administrative Expense Claim** means any right to payment constituting a cost or expense of administration of the Reorganization Case (other than a Fee Claim) allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's estate, any actual and necessary costs and expenses of operating the Debtor's business and any fees or charges assessed against the Debtor's estate under Section 1930 of Chapter 123 of Title 28 of the United States Code.

        1.4     **Allowed** means, with reference to any Claim: (a) any Claim against the Debtor which has been listed in the Schedules as liquidated in amount and not disputed or contingent, and for which no contrary or inconsistent proof of claim has been filed; or notwithstanding the Claim being listed in the Schedules as liquidated in an amount and not disputed or contingent, (i)the Debtor has filed an objection to the Claim which has been overruled, or (ii) as to which no objection to allowance has been interposed prior to the deadline by which such objections must be filed in accordance with this Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court and as to which such deadline has expired; (b) any timely filed proof of claim (i) as to which no objection to allowance has been interposed prior to the deadline by which such objections must be filed in accordance with this Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court and as to which such deadline has expired, or (ii) as to which an objection has been filed and not withdrawn and such objection has been determined by a Final Order (but only to the

Page 1 of 34

extent such objection has been overruled); (c) any Claim which is not a Disputed Claim; or (d) any Claim allowed hereunder. Unless otherwise specified herein or allowed by order of the Bankruptcy Court, Allowed Claims (including Allowed Administrative Expense Claims) shall not, for any purpose under this Plan, include post Petition Date interest on such Claims, unless otherwise provided for under this Plan.

1.5    **Assets** means all of the right, title and interest of the Debtor in and to property of whatever type or nature (real, personal, mixed, tangible or intangible).

1.6    **Avoidance Actions** means all claims, rights and causes of action of the Debtor and the Estate that arise under the terms of the Bankruptcy Code, including, but not limited to, all preference, fraudulent conveyance and other causes of action under chapter 5 of the Bankruptcy Code, whether or not such litigation has been commenced as of the Effective Date.

1.7    **Bankruptcy Code** means Title 11 of the United States Code, as amended from time to time, as applicable to the Reorganization Case.

1.8    **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of California or any other court exercising competent jurisdiction over the Reorganization Case or any proceeding therein.

1.9    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code, as amended from time to time, applicable to the Reorganization Case, and any Local Rules of the Bankruptcy Court.

1.10    **Bar Date(s)** means the original claims bar date of April 9, 2010 or such other dates fixed by order(s) of the Bankruptcy Court or this Plan as the day(s) by which all Persons asserting a certain Claim must have filed proofs of such Claim or be forever barred from asserting such Claim against the Debtor or the estate.

1.11    **Beneficiaries** means collectively the holders of Allowed Claims under the Plan, or any successors to such holders' Allowed Claims.

1.12    **Business Day** means any day other than a Saturday, a Sunday, or any other day on which nationally chartered banking institutions in San Diego, California are required or authorized to close by law or executive order.

1.13    **Cash** means legal tender of the United States of America or a commercially recognized cash equivalent.

1.14    **Causes of Action** means any and all of the Debtor's actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and Claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, whether or not such litigation has been commenced as of the Effective Date.

1.15    **Claim** means "claim" as defined in section 101(5) of the Bankruptcy Code.

1.16    **Class** means a Claim or interest, or a group of Claims or interests, consisting of those Claims or interests which are substantially similar to each other, as classified under the Plan, or a Claim or interest, or a group of Claims or interests, classified by amount as may be reasonable and necessary as an administrative convenience claims, or a group of Claims or interests which are otherwise required to be separately classified.

1.17    **Confirmation Date** means the date that the Confirmation Order is entered on the docket of the Bankruptcy Court.

1.18    **Confirmation Hearing** means the hearing to be held by the Bankruptcy Court regarding confirmation of this Plan; as such hearing may be adjourned or continued from time to time.

1.19    **Confirmation Order** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.20    **Debtor** means Sargent Ranch, LLC.

1.21    **Deficiency Claim** means, with respect to a Claim that is partially secured, the amount by which the Allowed amount of such Claim exceeds the Debtor's interest in such property that collateralizes the Claim.

1.22    **Disallowed** (when used in the context of a Claim or Interest) means the entirety or any portion of any Claim against, or interest in, the Debtor which has been disallowed by a Final Order of the Bankruptcy Court.

1.23    **Distribution Account** means the federally insured bank account to be administered and maintained by the Distribution Agent, which is to be created pursuant to and for the purposes set forth in the Plan.

1.24    **Distribution Agent** shall mean the Watley Group, LLC or such other person or entity hereafter designated by the Debtor as Disbursing Agent and/or as approved by the Bankruptcy Court.

1.25    **Disclosure Statement** means the Disclosure Statement that relates to this Plan, as such Disclosure Statement may be amended, modified or supplemented (including all exhibits and schedules annexed thereto or referred to therein).

1.26    **Disclosure Statement Hearing** means the hearing held by the Bankruptcy Court to consider approval of the Disclosure Statement as containing adequate information as required by section 1125 of the Bankruptcy Code, as the same may be adjourned or continued from time to time.

1.27    **Disputed Claim** means any Claim that is not an Allowed Claim as of the relevant date.

1.28    **Effective Date** means the date that is eleven (11) calendar days after the Confirmation Date, or, if such date is not a Business Day, the next succeeding Business Day, so long as no stay of the Confirmation Order is in effect on such date; provided, however that if, on or prior to such date, all conditions to the Effective Date set forth in this Plan have not been satisfied, or waived, then the Effective Date shall be the first Business Day following the day on which all such conditions to the Effective Date have been satisfied or waived.

1.29    **Estate** means the estate of the Debtor in the Reorganization Case created pursuant to section 541 of the Bankruptcy Code.

1.30    **Fee Claim** means a Claim by a Professional Person for compensation, indemnification or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Reorganization Case.

1.31    **Final Order** means an order of the Court or of any court of competent jurisdiction which has been entered and which has become final by expiration of the time of an appeal therefrom, or, if an appeal(s) is taken, by resolution of such appeal(s) in favor of one of the parties thereto and the expiration of the time for further appeal(s) therefrom.

1.32    **General Unsecured Claim** means a Claim against the Debtor, including a Deficiency Claim, but other than a Secured Claim, an Unsecured Priority Claim, an Administrative Expense Claim, a Fee Claim, a Priority Claim or a Tax Priority Claim.

1.33    **Insider** has the meaning ascribed to that term by section 101(31) of the Bankruptcy Code.

1.34    **Insured Claim** means any Claim asserted against the Debtor arising prior to the Petition Date including a Claim based upon or which arises out of acts, events or conduct occurring prior to the Petition Date, and that is covered under the Debtor's insurance policies, but solely to the extent (a) such Claim is so covered and (b) proceeds of such insurance policies have not been otherwise exhausted.

1.35    **Lender Litigation** shall mean that certain adversary proceeding titled as Sargent Ranch, LLC v. First Blackhawk Financial Corporation, et al and filed in the United States Bankruptcy Court for the Southern District of California as Case No. _____.

1.36    **Liquidating Trust** shall mean a trust created by the Debtor upon Confirmation of the Plan for the purposes of holding and administering the promissory note and deed of trust executed by the Debtor pursuant to the Plan of Reorganization for the benefit of all classes of Allowed Claims against the Debtor, excluding equity holders under Class 8, Class 7 claims of Pierce and Class 5(a) and 5(b) priority claims.

1.37    **Liquidating Trustee** shall mean the person approved by the United States Bankruptcy Court to be the trustee of the Liquidating Trust. The Debtor intends to nominate attorney, Scott L. Baker, as the Liquidating Trustee, whose resume and qualifications shall be provided as an exhibit in the Disclosure Statement. The terms also includes any successor Trustee approved by the United States Bankruptcy Court or nominated by a majority of the creditors in Classes 1, 2, 3, 4, 6, and 7 following the death or resignation of the initial Liquidating Trustee.

1.38    **Old First Deed of Trust Litigating Creditors** shall mean any creditors claiming a security interest by way of a fractionalized deed of trust interest in that certain deed of trust recorded against the Sargent Ranch Property on May 31, 2000 who have:

(a)    Opted out of the class of Settling Secured Creditors Liquidating Trust; and

(b)    Been determined by final order of the United States Bankruptcy Court to be a member in this class.

1.39    **Old Second Deed of Trust Litigating Creditors** shall mean any creditors claiming a security interest by way of a fractionalized deed of trust interest in that certain deed of trust recorded against the Sargent Ranch Property on November 6, 2000 who have:

(a)    Opted out of the class of Settling Secured Creditors Liquidating Trust; and

(b)    Been determined by final order of the United States Bankruptcy Court to be a member in this class.

1.40    **Old Third Deed of Trust Litigating Creditors** shall mean any creditors claiming a security interest by way of a fractionalized deed of trust interest in that certain deed of trust recorded against the Sargent Ranch Property on October 1, 2003 who have:

(a)    Opted out of the class of Settling Secured Creditors Liquidating Trust; and

(b)    Been determined by final order of the United States Bankruptcy Court to be a member in this class.

1.41    **Operating Distribution Funds** shall mean those sums of money available for distribution to creditors which equals 65% of the gross proceeds received by the Debtor as a result of a sale or lease of any of the Sargent Ranch Property, including but not limited to the sale or lease of a mitigation credit after payment of any principal and interest required to be paid to the Priming Financing. Operating Distribution Funds shall also include 65% of the net proceeds received by the Debtor as a result of it operating a sand and gravel extraction operation after deducting all operating expenses incurred in conjunction with such operation. Operating Distribution Funds shall also include an initial payment of $1,550,000 to be received by the Debtor from the Priming Financing. Such amounts shall be calculated as of December 31 and June 30th of each year of the Plan. All of such amounts less a reserve of $10,000 shall be paid to the Liquidating Trust by February 28th and August 31st of each Plan year.

1.42    **Person** means any individual, corporation, partnership, association, indenture trustee, limited liability company, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, interest holders, or any other entity.

1.43    **Petition Date** means January 4, 2010.

1.44    **Plan** means this Plan of Reorganization, including, without limitation, any exhibits or schedules hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.45    **Plan Documents** means the agreements, documents and instruments entered into on or as of the Effective Date as contemplated by, and in furtherance of, the Plan.

1.46    **Post-Confirmation Debtor** shall mean the Debtor, after the Confirmation Date, but before the Effective Date.

1.47    **Priming Financing** shall mean financing obtained by the Debtor in one or more series of priming loans in an amount between $3,000,000 and $20,000,000, but not to exceed $20,000,000 in total, which either by final order of the Bankruptcy Court or the Confirmation of the Plan of Reorganization is secured by a priming first deed of trust on the Sargent Ranch property subordinate only to liens for real property taxes and easements, covenants and restrictions of record.

1.48    **Priority Claims** means all claims as defined in sections 507(a)(4), (a)(5) and (a)(7) of the Bankruptcy Code only, excluding claims as defined in sections 507(a)(2), (a)(3), (a)(6), (a)(8) and (a)(9) of the Bankruptcy Code.

1.49    **Priority Tax Claim** means any Claim of a governmental unit against the Debtor of the kind entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.50    **Pro Rata** means the proportion that the dollar amount of an Allowed Claim in a particular

Class or particular Classes bears to the aggregate dollar amount of all Allowed Claims in such Class or Classes.

1.51    **Professional Person(s)** means all Persons retained by order of the Bankruptcy Court in connection with the Reorganization Case, pursuant to sections 327, 328, 330 or 1103 of the Bankruptcy Code.

1.52    **Rejection Claim** means any Claim arising under section 502(g) of the Bankruptcy Code and any Claim of a holder of an Executory Contract which pursuant to prior Order of Court is allowed as a Claim under section 502(g) of the Bankruptcy Code.

1.53    **Rejection Claims Bar Date** means the date that is 30 days after the Effective Date and by which all Persons asserting Claims arising from the rejection of an executory contract or unexpired lease must have filed proofs of such Claims or be forever barred from asserting such Claims against the Debtor or the estate, or other similar order, as may be entered by the Bankruptcy Court.

1.54    **Remaining Cash** means all Cash in the possession of the Debtor as of the Effective Date.

1.55    **Reorganization Case** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date in the Bankruptcy Court and styled *In re Sargent Ranch, LLC,* Case Number 10-00046-PB11.

1.56    **Reorganized Debtor** means the Debtor on and after the Effective Date.

1.57    **Sargent Ranch Property** shall mean that certain property consisting of approximately 6400 acres located at 2755 US Highway 101, Gilroy, California, Santa Clara County tax parcels 810-38-002, 810-37-008, 810-37-007, 810-37-006, 810-37-005, 810-38-009, 810-38-014, 810-37-005, 810-38-009, 810-841-36-013 and Santa Cruz County tax parcels 110-201-04, 110-251-06, 110-271-01 and 110-281-01

1.58    **Schedules** means the schedules of assets and liabilities, lists of holders of Claims, and the statement of financial affairs filed by the Debtor with the Bankruptcy Court, as such schedules and statements may be supplemented or amended.

1.59    **Schedule of Assumed Contracts and Leases** means the schedule of executory contracts to be assumed, if any, pursuant to section 365 of the Bankruptcy Code consistent with the terms and conditions of this Plan, which schedule will be included in the Plan Supplement. As of the date thereof all executory contracts were either terminated pre-petition or assumed post petition.

1.60    **Settling Secured Creditor Liquidating Trust Claimants** shall mean any creditor claiming a security interest by way of a fractionalized deed of trust secured by the Sargent Ranch Property who has either affirmatively elected to be a member of Class 1 hereof or whom has not opted out of Class 1 in writing prior to the time set by the Court as the last day to vote on the Debtor's Plan.

1.61    **Subordinated Unsecured Creditors** shall mean those creditors determined by a final order of the United States Bankruptcy Court to be unsecured and subordinated to the claims of General Unsecured Claims under 11 U.S.C. § 510 or applicable law.

1.62    **Unsecured Claim Distribution** means the distribution of Cash by the Distribution Agent to each holder of an Allowed Unsecured Claim as set forth in section 4.3 of this Plan.

**B.    *Interpretation; Application of Definitions and Rules of Construction.***

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. Any capitalized term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. Except for the rule contained in section 102(5) of the Bankruptcy Code, the rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. To the extent there is an inconsistency between any of the provisions of this Plan and any of the provisions contained in the Plan Documents to be entered into as of the Effective Date, the Plan Documents shall control.

## SECTION 2. ADMINISTRATIVE EXPENSE CLAIMS AND FEE CLAIMS

### 2.1    *Administrative Expense Claims in General*

2.1.1    Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment (and except to the extent provided in sections 2.1 or 2.2 of this Plan), the Debtor shall pay to each holder of an Allowed Administrative Expense Claim Cash from the Distribution Account, in an amount equal to such Claim on the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable.  Such claims shall be paid from amounts reserved for in the Priming Financing.

2.1.2    All fees payable pursuant to 28 U.S.C. § 1930(a)(6) shall be paid by the Debtor on or before the Effective Date.

2.1.3    Upon the disposition of any property (including real or personal property) of the Debtor, the Bankruptcy Court, upon application of the Debtor, may determine the amount of any tax claim accruing as a result of the disposition of said property pursuant to section 503(b)(1)(B) of the Bankruptcy Code.

### 2.2    *Bar Date for Administrative Expense Claims.*

Proofs of Administrative Expense Claims and/or requests for the allowance and payment of Administrative Expense Claims, other than a Fee Claim, unless otherwise required pursuant to a prior order of the Bankruptcy Court, must be filed and served by the date that is no later than forty-five (45) days after the Effective Date. Notwithstanding anything to the contrary herein, no proof of Administrative Expense Claim or application for payment of an Administrative Expense Claim need be filed for the allowance of any: (a) expense or liability incurred in the ordinary course of the Reorganized Debtor's business on or after the Effective Date; (b) Administrative Expense Claim held by a trade vendor, which administrative liability was incurred by the Debtor in the ordinary course of business between the Debtor and such creditor on or after January 4, 2010; or (c) fees of the United States Trustee arising under 28 U.S.C. § 1930 allocable to periods on or after January 4, 2010. All Claims described in clause (a), (b) and (c) of the immediately preceding sentence shall be paid by the Reorganized Debtor in the ordinary course of business. Any Persons that fail to file a proof of Administrative Expense Claim or request for payment thereof on or before the Administrative Bar Date as required herein, or other applicable order of the Bankruptcy Court, shall be forever barred from asserting such Claim against the Debtor, the estate, the Reorganized Debtor or its property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Expense Claim.

2.3    *Fee Claims*

All Professional Persons seeking allowance by the Bankruptcy Court of a Fee Claim (a) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by a date that is no later than the date that is forty-five (45) calendar days after the Effective Date and (b) shall be paid by the Plan Trust on behalf of the Debtor, in full from the Disbursement Account, in such amounts as are approved by the Bankruptcy Court (a) upon the later of (i) the Effective Date and (ii) ten (10) calendar days after the date upon which the order relating to the allowance of any such Fee Claim is entered or (b) upon such other terms as may be mutually agreed upon between the holder of such Fee Claim and the Plan Trust.

## SECTION 3. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following are the Classes of Claims and equity interests of the Debtor, along with a specification of which Classes are (a) impaired or unimpaired by this Plan, and (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code:

| | |
|---|---|
| Class 1 | Settling Secured Creditor Liquidating Trust.  This class consists of all Settling Secured Creditor Liquidated Trust Claimants.  This Class is impaired. |
| Class 2 | Secured claim of Old First Deed of Trust Litigating Creditors.  This Class is impaired. |
| Class 3 | Secured claim of Old Second Deed of Trust Litigating Creditors.  This Class is impaired. |
| Class 4 | Secured claim of Old Third Deed of Trust Litigating Creditors.  This Class is impaired. |
| Class 5(a) | Priority Tax Claims.  This Class is unimpaired. |
| Class 5(b) | Priority Claims. This Class is unimpaired. |
| Class 6 | General Unsecured Creditors.  This Class is impaired. |
| Class 7 | Subordinated Unsecured Creditors. This Class is impaired. |
| Class 8 | Claims of Wayne F. Pierce.  This Class is impaired. |
| Class 9 | Equity Security Holders.  This Class is impaired. |

## SECTION 4. TREATMENT OF CLAIMS AND EQUITY INTERESTS

In full and final satisfaction of their respective Claims against the Debtor, the following Classes of Creditors and equity interests and the holders of Claims therein shall receive the following treatment:

Initially, the Debtor shall issue a promissory note and deed of trust secured by a second lien position on the Sargent Ranch Property to the Liquidating Trust. Such note and deed of trust shall be in a second position subject only to the Priming Financing in an amount not to exceed $20,000,000. The promissory note shall initially be issued in the amount of $165,000,000 subject to adjustment once all claims have been determined by either the automatic settlement, Lender Litigation or otherwise.

The promissory note will require an initial payment of $1,550,000 and semi annual periodic distributions from the Operating Distributions Funds. As funds are received, disbursements shall be made on the promissory to the creditors by the Distribution Agent as follows:

4.1    *Secured Claims*

**Class 1** Class 1 claimants shall receive periodic distributions as a result of an automatic settlement as to their claims in the Lender Litigation. All creditors in Class 1 will receive the same treatment. Initially, the amount of the Class 1 creditors claims will be determined by taking the gross amount of money lent by the creditor to the Debtor and subtracting therefrom any interest, including any prepaid interest, paid back to such creditor, and then multiplying this amount by 1.35. By way of example: original debt = $1,000,000, Prepaid Interest = $250,000, and calculation of claim = ($1,000,000 - $250,000) x 1.35 = $1,015,500.00.

The claims in this class shall be paid semi annually without interest by the Distribution Agent from the Operating Distribution Funds on or before February 28th and August 30th of each year of the Plan until the earlier of the promissory note having been paid in full or seven years after the Effective Date of the Plan. In addition to the payments called for herein above, the class 1 claimants will also receive payments equal to 10% of distributions made to the Class 8 Equity Security Holders for a period equal to ten years from the Effective Date of the Plan

**Class 2**: The Allowed Amount of each Class 2 creditor shall be set by the Bankruptcy Court or as otherwise agreed to between the Debtor and such creditor subject to Bankruptcy Court approval. After the payment in full of all Class 1 creditors, Class 2 creditors shall be paid in full along with interest thereon at the rate of 5% per annum commencing on the Effective Date of the Plan. Such payments shall be paid Pro Rata semi-annually by the Distribution Agent from the Operating Distribution Fund on or before February 28 and August 30 of each year of the Plan. The creditors in this class shall not retain their security interests in the Sargent Ranch Property. Rather, their rights will be tied to the promissory note and deed of trust given to the Liquidating Trust as set forth above.

**Class 3** The Allowed Amount of each Class 3 creditor shall be set by the Bankruptcy Court or as otherwise agreed to between the Debtor and such creditor subject to Bankruptcy Court approval. After the payment in full of all Class 1 and Class 2 creditors, Class 3 creditors shall be paid in full along with interest thereon at the rate of 5% per annum commencing on the Effective Date of the Plan. Such payments shall be paid Pro Rata semi-annually by the Distribution Agent from the Operating Distribution Fund on or before February 28 and August 30 of each year of the Plan. The creditors in this class shall not retain their security interests in the Sargent Ranch Property. Rather, their rights will be tied to the promissory note and deed of trust given to the Liquidating Trust as set forth above.

**Class 4** The Allowed Amount of each Class 4 creditor shall be set by the Bankruptcy Court or as otherwise agreed to between the Debtor and such creditor subject to Bankruptcy Court approval. After the payment in full of all Class 1, Class 2 and Class 3 creditors, Class 4 creditors shall be paid in full along with interest thereon at the rate of 5% per annum commencing on the Effective Date of the Plan. Such payments shall be paid Pro Rata semi-annually by the Distribution Agent from the Operating Distribution Fund on or before February 28 and August 30 of each year of the Plan. The creditors in this class shall not retain their security interests in the Sargent Ranch Property. Rather, their rights will be tied to the promissory note and deed of trust given to the Liquidating Trust as set forth above.

### 4.2    *Priority Claims (Class 5)*

**Class 5(a) Priority Tax Claims:** A holder of an Allowed Priority Tax Claim shall receive from the Disbursement Account, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim.

**Class 5(b) Priority Claims** A holder of an Allowed Priority Claim shall receive from the Distribution Account, in full satisfaction of such Claim, Cash in an amount equal to such Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) the first (1st) Business Day after the date that is thirty (30) calendar days after the date (a) such Priority Claim becomes Allowed. Payments for this Class shall be paid from funds received from the Priming Financing.

### 4.3    *General Unsecured Claims (Class 6)*

The Allowed Amount of each Class 6 creditor shall be set by the Bankruptcy Court or as otherwise agreed to between the Debtor and such creditor subject to Bankruptcy Court approval. After the payment in full of all Secured Claims above, Class 6 creditors shall be paid in full without interest. Such payments shall be paid Pro Rata semi-annually by the Distribution Agent from the Operating Distribution Ffund on or before February 28 and August 30 of each year of the Plan.

### 4.4    *Subordinated Unsecured Claims (Class 7)*

The Allowed Amount of each Class 7 creditor shall be set by the Bankruptcy Court or as otherwise agreed to between the Debtor and such creditor subject to Bankruptcy Court approval. After the payment in full of all Secured Claims and Class 6 claims above, Class 7 creditors shall be paid in full without interest. Such payments shall be paid Pro Rata semi-annually by the Distribution Agent from the Operating Distribution Fund on or before February 28 and August 30 of each year of the Plan.

### 4.5 *Claims of Wayne F. Pierce (Class 8)*

Class 8 consists of the claims of Wayne F. Pierce. The Debtor listed $7,125,000 in accrued management fees for the period of 05/2000 to 01/2010 as being due to Wayne F. Pierce. The Debtor also listed in Schedule B loans to Wayne Pierce of $2,500,000. Under the Plan the claims of Wayne Pierce will be voluntarily waived by Mr. Pierce in exchange for a release by the Debtor of any and all claims that the Debtor could have against Mr. Pierce. As a result thereof, Wayne F. Pierce will not receive any distribution under the Plan on account of his unsecured claim. The Order of Confirmation will constitute a release of the Debtor's claims against Mr. Pierce of every kind and nature.

The Allowed Amount of each Class 8 creditor shall be set by the Bankruptcy Court or as otherwise agreed to between the Debtor and such creditor subject to Bankruptcy Court approval. After the payment in full of all Secured Claims, Class 6 and Class 7 Claims above, Class 8 creditors shall be paid in full. Such payments shall be paid Pro Rata semi-annually by the Distribution Agent from the Operating Distribution fund on or before February 28 and August 30 of each year of the Plan. In the event that the Class 8 creditors have not been paid in full within seven years of the Effective Date of the Plan, the Class 8 creditors may exercise any and all rights and remedies available to them under applicable law.

### 4.6 *Equity Interests (Class 9)*

Class 8 consists of the current equity ownership interest of the Debtor. The records indicates that the Debtor is owned by Wayne F. Pierce (70%), Arthur I. Appleton, Jr. (15%), and Gregory F. Griffin (15%). The interests of Arthur I. Appleton, Jr and Gregory F. Griffin are being challenged as part of the Lender Litigation. To the extent that any such challenge is successful, that interest shall revert to Wayne F. Pierce subject to dilution as indicated herein. As of the Effective Date of the Plan and subject to the legal challenge as referenced above and subject to dilution as provided below, the holders of the Equity Interests shall retain 100% of the Reorganized Debtor. There shall also be reserved for dilution up to 50% of the Reorganized Debtor with up to 10% being reserved to the Liquidating Trust as provided above and up to 40% to the lender providing Priming Financing.

### 4.7 **Promissory Note Treatment At End of Plan**

In the event that the promissory note is not paid in full within 7 years after the Effective Date of the Plan for secured creditors and ten years after the Effective Date of the Plan for unsecured creditors, the Liquidating Trustee, within its discretion, shall have the right to foreclose on the note and deed of trust, negotiate a further extension of the note or a conversion of the note into permanent equity ownership of up to 10% of the Reorganized Debtor. If such unpaid note principal is converted into equity, it will be converted at the rate of .5% for every $2,000,000 of outstanding Debt. In addition to the payments called for hereunder, the Debtor shall compensate the Liquidating Trustee by paying the reasonable and necessary costs and expenses of the Liquidating Trustee and a fee equal to one percent (1%) of all sums paid to Classes 1, 2, 3, 4, 6 and 7. Once all purposes of the trust have been completed, the trust shall terminate.

In the event that the note is converted into equity distributions will be made from monies received by the Liquidating Trust from its up 10% equity interest. Such distributions will continue until all creditors in Classes 1, 2, 3, 4, 6, and 7 are paid in full under their respective provisions. After each of such classes have been paid in full, then distributions thereafter will be on a pro rata basis to creditors in Classes 1, 2, 3, 4, 6, and 7

SECTION 5. MEANS FOR IMPLEMENTATION

5.1     *Property Overview*

Debtor holds a significant long-term, multi-business, opportunity based on its ownership of the Sargent Ranch Property. The Sargent Ranch Property is located 5 miles south of downtown Gilroy, CA an agricultural and residential community located about 20 miles south of San Jose and 30 miles north of Monterey, CA. The eastern boundary of the Sargent Ranch Property has over 3 miles of frontage along State Highway 101 with existing dedicated north and southbound access, while the west portion of the Sargent Ranch Property benefits from dedicated access to State Highway 129. In addition to excellent highway access, Debtor has direct rail access via an existing rail spur to the Union Pacific Railroad. The 5,200 acres of the Sargent Ranch Property in Santa Clara County have approved and recorded "Certificates of Compliance" from the Santa Clara County Board of Supervisors certifying that the Sargent Ranch Property is in compliance with the State of California Subdivision Maps Act, as well as the current Santa Clara Zoning and General Plans. The certificates allow for a wide variety of low density commercial, industrial, residential and retail uses.

5.2     *Business Overview*

The Debtor believes the value of the Sargent Ranch Property can be dramatically increased by investing in several natural resource opportunities to reach positive cash flow as quickly as possible. While today the Sargent Ranch Property is raw land, once permitted to develop the vast natural opportunities on the property, and once the business is cash flow positive, the value of the land is increased dramatically by the value of the business. Valued without permits, only for agricultural use, in a forced liquidation, Creditors have taken the position that the land is only worth approximately $5,000 per acre and only 5,000 acres are habitable (the remainder being too mountainous) resulting in a projected total value of $25 million in a forced liquidation. However, the Debtor and The Watley Group estimate the value of Sargent Ranch increases dramatically in less than three years from the forced liquidation value of $25 million up to a value of the the land plus the value of the sand and aggregate businesses ($75 million) Total value is thus increased to $100 million ($25 million plus $75 million) after spending less than $20 million to build the businesses on the Sargent Ranch Property. This does not include the value of other opportunities such as residential, industrial and commercial real estate development, solar power development, as well as environmental mitigation credits that might be sold.

The day to day management of the Debtor is being done under an approved employment agreement with The Watley Group, LLC. It plans to implement a phased "step-by-step" approach to the development of the Sargent Ranch Property. The short-term highest and best use and value of Debtor is the development of the sand, aggregate and liquid asphalt businesses and sales of environmental mitigation credits. Longer-term, management will continue to evaluate other opportunities such as solar and wind power, as well as various real estate development opportunities. However, the value of real estate development cannot be estimated due to the uncertain economic outlook.

There are currently seven separate business opportunities on the Sargent Ranch Property that the Company plans to evaluate and implement when and as they are economically attractive. All seven are allowed under the current County of Santa Clara General Plan and Zoning Ordinances. These seven business opportunities are as follows, categorized by the relative time frame in which income is expected to be realized from each of them. The seven current resources are shown below, along with information related to their value to the Debtor.

5.2.1    *Near-Term Businesses (First 2 years)*:

*Construction Materials / Sand Extraction:*

A 25 million ton, sand quarry worth approximately $73 million upon permitting in approximately 2 years.

Business Objectives/Summary

a.     Invest $3.9 to $4.1 million to, permit, build and begin operating a 25 million ton facility to extract sand quarry on 100 acres of land on the Property and commence operations in 24 to 30 months.

b.     Achieve approximate annual operating cash flow of $5,400,000 after Year 1 of operations, $10,500,000 after Year 2 of operations and $16,100,000 after Year 3 of operations and average annual cash flow of $35,500,000 after Years 4 through 10 of operations.

c.     Consider selling the quarry project to a third party at a value of over $70 million based on permits, resources in the ground, and operating projections.

Experts engaged by Debtor and other qualified outside parties have verified very large deposits of construction grade sand that can be extracted with relatively low cost and minimal environmental impact. These independent findings, based on over 100 excavation sites and deep core borings to a depth of 350 feet, confirmed the existence of 200,000,000+ tons of C-33 construction-grade sand, back-fill sand and gravels in approximately 1,000 acres of the Property. This amount of sand could alone supply local markets for many years to come. However, to be conservative and enhance the likelihood of quickly gaining an operating permit for this Resource, the Debtor plans a 25 million ton facility on 100 acres which would be highly profitable at that size.  The Debtor has received reports (including those provided by the State of California) indicating very positive demand for construction sand in the coming years as compared to the available supply.

Tests to determine the extent of sand deposits were primarily conducted between January 1, 2007 and September 2009 by Granite Construction Company ("Granite") (an $850 million market cap building products company – NYSE.GVA - www.graniteconstruction.com), and TerraSearch, Inc., a large private geological materials testing firm (www.terraserchinc.com). (TerraSearch was recently acquired by RMA Group. RMA Group is a California based geotechnical engineering consulting firm established in 1962 that provides geotechnical engineering, geo-environmental consulting, construction materials testing and inspection, and construction management.)

Action Steps for the Company and Related Costs to Achieve Objectives:

a.     Retain Freeman Associates ("Freeman") to advise and assist in securing a use permit at a cost of $15,000 per month and a performance based success fee of up to $500,000 when the permit is obtained. Freeman Associates ("Freeman"), is an entitlement and project management firm based in Palo Alto widely recognized as one of the best in the industry and especially in Northern California. http://www.vfreeman-associates.com/

b.  Engage an engineering/project manager specialized in this type of development at total cost of approximately $400,000 over the two year permitting and pre-production period. The Company has been also in discussions with Tetra Tech, Inc. a large publicly held geotechnical engineering firm to provide confirmation of this Resource and engineering work to support gaining operating permits. www.tetratech.com

c.  Conduct biological, traffic, civil engineering, and environmental studies in support of the permit application at a cost of $300,000. These cost estimates are based on estimates from Freeman.

d.  Build required roads and infrastructure (including supplying water and power to the quarry) at a cost of $500,000 to $750,000.

e.  Have an environmental impact report performed under the auspices of the County of Santa Clara Planning Department and a reclamation plan developed by a sub-contractor of Freeman for an estimated total of $650,000.

f.  Post a reclamation bond of $437,500 in cash.

g.  Other costs and a 5% contingency amount to $750,000.

*Riparian and Habitat Mitigation Credit Sales:* Riparian and Habitat Mitigation Credit Sales (1,800 acres of credits that can be sold on an "unfinished" basis for between $20,000 and $75,000 per acre. This Resource will be evaluated to determine how much of these credits can and should be sold and at what price and how many should be reserved for use on the Property.

Objectives/Action Steps

a.  Retain a specialized consulting firm immediately upon funding (Live Oak Associates-see below) to further evaluate this Opportunity and establish and execute a marketing plan for these credits.

b.  This evaluation would determine what credits can be sold and which credits should be retained so that Sargent Ranch can execute its long term plan.

c.  Sell approximately 377 credits during 2011 through 2017 and yield total revenue of $23,646,000 during this time period.

d.  Sargent Ranch enjoys a wide variety of natural rivers, streams, wetlands, trees and grasslands environments. These lands create numerous acres of habitats for various wildlife and large and small vegetation.

The Federal Government encourages wildlife preservation and the prudent use of land and other natural resources through the Clean Water Act and the Endangered Species Act. It has therefore mandated that developers who destroy riparian/wetland or endangered species habitats in their development processes must offset their destruction in some way. The offset method preferred most by regulators is for developers to purchase mitigation "credits" from third parties who have preserved or restored such habitats. Surveys completed on the Property verify a substantial amount of Riparian and Endangered Species credits available beyond its own projected needs, which Management intends to sell to third parties who require these credits, including both private and public entities.

Values for this Resource are based on the data and analysis of market information provided by outside independent specialized consultants. For example, Live Oak Associates ("Live Oak"), a biological consulting firm based in San Jose, CA (YPERLINK"http://www.loainc.com"www.loainc.com), estimated that the Company could generate at least 800 Riparian Habitat credits, 200 Red-Legged Frog Habitat credits, and 750 to 1,000 Tiger Salamander Habitat credits from the Sargent Ranch Property.

Surveys completed from March 1 through November 21, 2009 by Live Oak concluded that there are a minimum of 800 Riparian Credits on the property with a sale value of $50,000 to $75,000 per credit on an "unfinished" basis and $150,000 to $225,000 per credit on a "finished" basis. ("Finished" means that endowment funds and procedures have been created to ensure the proper monitoring of the habitat sites in perpetuity.) Purchasers of these credits are primarily public agencies, but also include private land developers. Likely buyers of the Company's credits include the Santa Clara County Water District, the Pajaro Valley Water District, the Valley Transportation Authority, the counties of Santa Clara, Santa Cruz, San Benito and Monterey, as well as others within a 75-mile radius of the property that must mitigate their disruption of riparian environments in the context of long-term infrastructure development.

In addition to the Riparian credits, the Property can also generate Habitat Mitigation Credits for various threatened species, including the California Tiger Salamander, Red-legged Frog, and certain plant species. Live Oak will be engaged to further develop and investigate these potential mitigation credits, which are valued between $30,000 and $50,000+ each (when "finished"). Live Oak estimates that the Property could support at least 1,000 Salamander and Frog Habitat credits combined.

The Debtor has already received interest from the Santa Clara Valley Water District to purchase 52 red-legged frog credits, which could yield the Company in excess of $2.6 million based on Santa Clara County value estimates of similar habitat credits.

Based on Debtor's research, including the amount ($81,400 per credit) that Santa Clara County expects to pay for similar habitat credits (see the Santa Clara County Habitat Conservation Plan: Mitigation Measure 3.3.5a), Management believes that the unfinished Frog Habitat and Salamander Habitat credits could be conservatively valued at $20,000 each.

Frog and Salamander Habitat credits also increase in value when "finished." Management's research and conclusion on the value of these credits are partly based on a key report, the Economic Analysis of Critical Habitat Designation for the California Red-Legged Frog. This report, prepared in 2009 by Industrial Economics, Inc and Berkeley Economic Consulting for the U.S. Fish and Wildlife Service, concluded that finished Red-Legged Frog credits are worth an average of $50,000 each. Management believes that the finished Salamander Habitat credits will be worth a similar amount each.

*Oil & Gas Royalty Leases*

Royalty stream valued between $450,000 and $620,000

Objectives/Action Steps
a.   Management has substantially completed the steps required to receive income from this Resource by completing leases with a lessee providing a good match for the Property.
b.   The main activities going forward will include monitoring the actions of its lessee and encouraging further exploration and production drilling.
c.   The Company expects to receive $100,000 to $400,000 per year in cash flow from this Resource without any additional expense.

There are three leases covering oil and gas rights on the Property. First, there is an existing "legacy" oil and gas royalty lease, signed in about 1970. This lease covers 320 acres of the Property and is owned by Patriot Resources, LLC ("Patriot") of Santa Barbara, CA. The Company does not receive oil or gas royalties

related to this lease because the royalty was prepaid in full. Patriot has been producing oil at the rate of 25,000 barrels per year on this property.

In October 2007, the Company entered into two additional oil and gas royalty leases with Patriot: 6.25% of gross profit on any hydrocarbons on the 320 acres adjacent to the area covered by the legacy lease described above, and 4.167% of the gross profit from any hydrocarbons extracted on the remaining 5,360 acres of the property.

Annual production under the legacy lease above is anticipated by Patriot to eventually be between 25,000-100,000 barrels per year, indicating $100,000 to $400,000 per year in cash flow to owners of the Property based on a $75 price per WTI barrel (The average forward price for October 2010 through January 2012 on the NYMEX exchange is $79.94 per WTI barrel. Source: CME Group, 9/17/10). Royalty income is anticipated to begin by mid-2011 contingent upon new production wells being completed by Patriot and emergence from bankruptcy. The low and high values ascribed to this resource were calculated using a 20% and 15% discount rate, respectively. The lease described above on the remaining acreage on the Property is not expected to produce significant quantities of hydrocarbons.

*Liquid Asphalt Extraction:*

Estimated asphalt deposit of 74,000 to 370,000 tons but subject to further evaluation to determine values and cash flow that the Company could receive.

Objectives/Action Steps
1.     Retain qualified expert consulting and potential joint venture firms (including Ellis Energy Investments, Inc. www.ellisenergyinvestments.com) to determine quality and extent of deposits, costs of extraction, and potential economic benefits to the Company.
2.     Evaluation period to be completed in six months from funding.
3.     If evaluation is positive, execute joint venture or other funding approaches to obtain permits and commence operations.
4.     Achieve cash flow from this Resource by 1st quarter of 2012.

There are a number of locations on the property where liquid asphalt or tar pools form at the surface. Because these hydrocarbons are less than 100 feet below the surface, they are not covered by the Company's oil and gas leases with Patriot and can therefore be sold or leased to other parties or be managed by the Company.

The Company currently lacks sufficient data to determine the entire size and scope of this Opportunity and intends to engage experts to further evaluate and develop an implementation plan. However, it has received information from tests conducted by Ellis Energy indicating that the quality of the liquid asphalt materials is very good and is useful for a variety of products. These products include use as: binding material for asphaltic concrete (primary use), component of asphaltic concrete patching material, and component of roofing patching material.

While the Company must complete further investigations to confirm the magnitude of this Opportunity, it did previously engage Ruggeri, Jensen, Azar & Associates ("RJA"), a Northern California-based engineering firm (www.rja-gps.com) to evaluate the potential quantity of this Opportunity. As a result of these efforts it was provided algorithms by RJA and excavation information from Giacolone Construction that has led management to estimate that the Property contains 7,453 tons of asphalt per acre on an estimated

Page 16 of 34

10 to 50 acres. If these parameters can be proven out by systematic further investigation, then the total amount of available asphalt is would be between 74,530 to 372,650 tons.

Liquid Asphalt for paving is an especially valuable product. Over the last year, the California Department of Transportation's Paving Asphalt Price Index has ranged between $330 and $435 per ton.

The Company requires further testing and production costing to determine the level of profitability that it could obtain from this Opportunity. Accordingly, no revenue is assumed in projections from this source pending these further investigations.

However, if the parameters of this Opportunity are confirmed, the Company believes that commencing asphalt extraction operations is relatively simple and straightforward process and could start in the second half of 2011 and produce cash flow in 2012. To realize revenues from this Resource, the Company must first secure a grading permit. The Company's advisors believe this permit can be obtained in several months' time at a cost of approximately $300,000. The actual extraction process requires only the contracting of mobile extraction and processing vehicles that can come onto the property with minimal preparation of the site. Alternatively, the raw material could be trucked off site and processed nearby.

### 5.2.2   *Medium to Longer Term Businesses*:

*Development of Solar and Wind Energy Facilities:*

The development of facilities for solar and wind energy generation are allowed by permit on the Property. These facilities are expected to play an important role in the long-term development of the Property. Management feels positively about the future contribution of solar in particular since there is a 120-acre parcel on the east side of the 101 freeway that is an ideal site for solar installations and also contains high wire transmission line towers for direct access to the local power grid at low cost. This represents an important advantage for the Company as construction of high tension wire transmission lines costs approximately $1 million per mile.

The Company plans to use part of the proceeds of the financing to further investigate the timing, costs and benefits of both solar and wind energy facilities.

*Commercial, Industrial and Residential Real Estate Development:*

Acreage in Santa Clara County has been appraised at $86 million; Acreage in Santa Cruz County estimated to be worth $12 million. These appraisals were based on more positive market conditions of past years, which Management believes can return in the future, given the Property's positive characteristics and location.

Management believes that real estate development represents the long term greatest value for Sargent Ranch. However, while the Property is clearly in the path of development, Management is currently unable to make an accurate prediction of the timing or values that it may receive. The Company intends to use a portion of the Use of Proceeds to develop a long-term master plan for the entire Property that can maximize its long term value. The Company understands that implementing this master plan may extend to 15 to 30 years (or even more) into the future.

The Company also is planning to donate approximately 200 acres of the Property to become a facility for the children of soldiers who have served, or are serving, in a war zone to minimize the negative

psychological impact on the family. This facility will be funded by private and public funds separate from Company funds and resources.

*Lease and Possible Sale of Water Rights:*

The Property retains all overlying, spring, and surface water rights, as well as five miles of riparian water rights from the Pajaro River. The Company is in the process of establishing the value of these water rights and the best way to utilize them and this will be a component of the long-term master plan. It may well be that depending on the type and scope of future development, it is possible that no water rights will be sold due to future requirements. However, leasing of water rights is a distinct possibility in the near and intermediate term.

A portion of the Use of Proceeds will be devoted to further analysis with outside experts of the Company's water rights and how best economically to use them in the short, medium and longer-term.

### 5.2.3    *Use of Proceeds*

Debtor intends to use up to $20,000,000 from the Priming Financing to fund its operations until it is cash flow positive in 2013 (for the purpose of financial modeling, it is assumed that operations expenditures begin in January 2011). However, Debtor's projections currently only forecast a need for $10,353,000. The excess capacity will allow the Debtor to pay for any unexpected regulatory expenses, capital expenditures, or other costs that are necessary to being producing cash flow from any of its business opportunities.

### 5.2.4    *Payment to Creditors*

Detailed projections are set forth in the Disclosure Statement that accompanies this Plan.  It should be reviewed for particulars.  In summary, however, it appears that based on such summary the following amounts are projected to be distributed to creditors under the Plan:

| | | |
|---|---|---|
| 2011 | - | $1,550,000 |
| 2012 | - | $0 |
| 2013 | - | $203,000 |
| 2014 | - | $5,139,000 |
| 2015 | - | $9,386,000 |
| 2016 | - | $12,528,000 |
| 2017 | - | $15,755,000 |
| | | |
| Total | | $44,561,000 |

Therefore, unsecured creditors should expect payments in full during the year 2017 at the latest.

### 5.2.5    *Plan of Reorganization Spending*

The Company will require up to $20 million in Priming Financing (less any amounts received by the Company in Debtor-in-Possession Financing pre confirmation) to develop, the business to positive cash flow. This will provide a substantial increase in the value of the Reorganized Debtor.

### 5.2.6    *Construction Materials Opportunity*

The cash will be used to manage the estate and to obtain a Quarry Site Use Permit and all other permits required for the operation of a sand and aggregate quarry on the Sargent Ranch property in about 2 years. The permit process can be broken down into the following phases:

Phase 1 - Geologic Investigation
Phase 2 - Project Definition and Preparation of Preliminary Project Plans
Phase 3 – Early Consultation with Key Agencies and Officials
Phase 4 - Pre Submission Conferences and Formal Application for Permit
Phase 5 - EIR process
Phase 6 - Public Hearings – Santa Clara County
Phase 7 - Secondary Permits – SMG, ACOE, USFW, CDFG – Prep Submission Packages
Phase 8 – Other Permits, ACOE 404, USFW Section 7, CDFG 1600, SMARA- SBMG
Phase 9 - Site Work and Operation Start Up

The Watley Group has estimated the sand quarry operations would increase the value of the reorganized debtor by $70 to $75 million when the facility opens.

The facility will also be used to evaluate the size and potential profitability of liquid asphalt business and the requirements to obtain the necessary permits for its operation. This portion of the Debtor's business could be operational in during 2011 and produce cash flow in 2012.

The facility will also be used to evaluate solar, wind energy, and lease of water rights Opportunities. The Reorganized Debtor will also continue to monitor long term opportunities for the Property in residential, commercial and industrial real estate as these markets are expected to improve over the next five years. However, no income has been projected from the Opportunities described in this paragraph for the next five years. The Reorganized Debtor will also continue to monitor long-term opportunities for the Property in residential, commercial and industrial real estate as these markets are expected to improve over the next five years. However, no income has been projected from the Resources described in this paragraph for the next five years.

A detailed set of 24 month and five-year financial projections for the Company as a whole and for its individual Resources is included in the Disclosure Statement that accompanies this Plan. You should read it carefully to evaluate the risks associated with the Confirmation of any Plan of Reorganization.

5.3     *Post-Confirmation Funding and Operations*

The implementation of the Plan of Reorganization requires Post Petition Priming Financing. The Disclosure Statement which accompanies this Plan discusses at length the types of funding that the Debtor has been able to identify for this purpose and why such financing must be obtained on a priming loan basis. The Disclosure Statement also evaluates the ability of the Debtor to obtain such financing and the terms and conditions that can be expected. Post petition Priming Financing and/or post confirmation Priming Financing will be separately applied for and subject to Bankruptcy Court approval.

5.4     *Litigation*

5.4.1     *Lender Litigation*

On or about September __, 2010, Sargent Ranch LLC, instituted the Lender Litigation against all of the secured creditors holding fractionalized interests in three deeds of trust that are recorded against the Sargent Ranch Property. The complaint, seeks violations of real estate multi lender laws (Business and

Professions Code Section 10238(f)(1)); violations of securities laws (Corporations Code Section 25501.5); violations of Civil Code Section 1671; equitable subordination under Section 510 of the United States Bankruptcy Code; breach of implied covenant of good faith and fair dealing; breach of fiduciary duty; breach of contract and fraud. The basic premise of the litigation is to accomplish a number of facets. One is to determine the legality and the validity of the fractionalized deeds of trust. Secondly, the complaint seeks to determine the amounts that are actually owed to secured creditors under the Plan of Reorganization. For example, some lenders have asserted that the balance owed to all lenders exceed $165,000,000. Because it is the belief of the Debtor that the loans that were made to Sargent Ranch LLC violated applicable law, a judicial determination is requested that the claims of the various secured creditors be treated more like they were equity of the Debtor as opposed to true lenders. Therefore, equitable subordination is sought under Section 510 of the Bankruptcy Code for this purpose. Notwithstanding the foregoing, as set forth below, the Debtor has proposed a simple settlement for any creditor wishing to avail itself of the same, or by default under the Plan of Reorganization.

### 5.4.2   *Employment of Special Litigation Firm*

In order to implement the Lender Litigation, the Debtor filed for and had approved the Application to Employ Affeld Grivakes Zucker, LLP. The Application to Employ Special Litigation Counsel was to provide two forms of services to the Debtor: First, to bring the Lender Litigation lawsuit against the various lenders and other responsible parties. Secondly, they were retained for the purposes of bringing a separate action potentially against David Wallace and any other responsible parties, for among other things, breach of a non-circumvention agreement and fraud. The Disclosure Statement discusses in detail each of these pieces of litigation. It should be noted that Affeld Grivakes Zucker, LLP has agreed to a modification of their regular hourly rates and have asserted a success fee as stated in their application. In the Lender Litigation, they are entitled to a reduced hourly rate of $295 per hour, plus a fee equal to 1% of the reductions achieved during the first 6 months after the filing of the complaint and 5% for reductions achieved thereafter, reducing the claims of creditors from $165,000,000 to the eventual figure contemplated by the Plan. The success fee, however, is capped at $1,500,000. With respect to the claim against David Wallace, et al. the matter is being done on an contingency basis with the firm receiving 33% of the total amount recovered if the matter resolves by settlement prior to 30 days of the date initially set for trial and 40% if the matter resolves by settlement, judgment or award within 30 days of the date initially set for trial.

### 5.4.3   *Automatic Settlement*

In filing the Lender Litigation, the Debtor was mindful of the fact that many of the investors that put up money for these loans utilized funds from pension funds or other savings that were necessary for their living expenses or retirement. In fact, the vast majority of the investors had no culpable knowledge of what was transpiring with respect to their loans. Therefore, the Debtor has set forth a simple settlement program for creditors wishing to be part of the plan. The treatment of such creditors are provided in Class 1 of the Plan. Essentially, except to the extent that the Debtor specifically excludes a particular creditor because of their individual culpability, which the Debtor may do so in its sole and absolute discretion by giving written notice of the same at the time ballots are solicited for voting on the Plan, all secured creditors subject to the Lender Litigation will automatically be eligible to participate in Class 1 of the Plan. Class 1 of the Plan is anticipated to pay to such creditors the full amount of their claim calculated on a modified basis. The settled claim will be determined by taking the gross amount lent by the lender and subtracting from such amount any interest or prepaid interest that was received by the lender. This amount will be multiplied by 1.35. The product will become the new amount owed to such creditor under the Plan. In addition thereto, bonus compensation equal to 10% of the amount paid to Equity Security Holders over a 10 year period commencing

with the Effective Date of Plan will also be paid to these creditors. Therefore, it is possible that the returns that are received by these creditors will be greater than the calculated amount of their claim. In order to participate under the Plan, a creditor will have the ability to accept the Plan or simply default in the litigation. In either event if the Plan is confirmed, creditor's claims will be paid as set forth above ahead of secured

creditors continuing with litigation. Future monitoring and ultimate remedies for the payment of these claims will be done by an independent Liquidating Trustee.

### 5.5    *Plan Documents*

On the Effective Date the Debtor shall execute and deliver such documents as would be necessary to carry out the terms and conditions of the Plan.

### 5.6    *Corporate Action*

The initial Board of Directors of the Reorganized Debtor shall consist of two members, Wayne F. Pierce and John Bryan. Subject to applicable law and any vacancy caused by death, disability or resignation, the initial Board of Directors of the Reorganized Debtor shall serve until the first annual meeting of the Reorganized Debtor. Thereafter, the Board of Directors of the Reorganized Debtor will be elected in accordance with the Articles of Organization and By-laws and applicable non-bankruptcy law.

On the Effective Date, the officers of the Reorganized Debtor shall be:

Wayne F. Pierce, Managing Member
John Bryan, Chief Executive Officer

Salaries shall be paid by the Reorganized Debtor as follows:
John Bryan: paid per terms of Court approved employment agreements.
Wayne F. Pierce: $250,000 annually, subject to adjustment.

### 5.7    *Continued Existence*

The Reorganized Debtor shall continue to exist after the Effective Date in accordance with applicable non-bankruptcy law.

### 5.8    *Avoidance Actions, Objections and Collections*

All avoidance actions assertable by the Debtor-in-Possession, pursuant to Sections 542 through 553 of the Bankruptcy Code, shall be retained by the Reorganized Debtor ("Avoidance Actions"). Until all litigation is completed up to and through the appeals process. The Reorganized Debtor shall make available for distribution to creditors 65% of the net recovery by the Reorganized Debtor on all Avoidance Actions, actions for the recovery of any pre-petition debt owed to the Debtor or any other Cause of Action (the "Avoidance Collections"). For the purposes hereof, the term Net Recovery shall mean the gross dollars collected in the particular action less all Litigation Expenses, attorneys fees and normal costs, including experts and employee overhead expended in the collection thereof. The Court will retain jurisdiction to determine the reasonableness of fees if any objection is made. At the time of any net distribution, the Debtor will provide to the Liquidating Trustee, a breakdown of the award or settlement and the fees and costs expended. Any creditor or party in interest, including the Liquidating Trustee can object to the deduction of

such fees and costs incurred within sixty (60) days of the net distribution by filing an objection with the United States Bankruptcy Court.

### 5.9    *Compromise of Controversies*

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to this Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in this Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the estate, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

### 5.10    *Approval of Plan Documents*

The solicitation of votes on this Plan shall be deemed a solicitation for the approval of the Plan Documents and all transactions contemplated hereunder. Entry of the Confirmation Order shall constitute approval of the Plan Documents and such transactions.

### 5.11    *Liquidation of Sargent Ranch Property*

From and after the Effective Date, the Sargent Ranch Property and the Reorganized Debtor's operations shall be used to implement this Plan and shall be devoted to the payment of all operating expenses and distributions to creditors. After the Effective Date, the Reorganized Debtor shall have the right to sell or lease Debtor's assets, including the Sargent Ranch Property and/or any rights attached to the Sargent Ranch Property, whether as a whole or in separate and distinct portions thereof, including but not limited to interests such as riparian and habitat mitigation credits, water rights, and real property parcels. The Reorganized Debtor shall have the right to sell or lease Debtor's assets without the necessity of approval or an order of the Bankruptcy Court. The sale or lease of any such real property or assets shall be free and clear of all liens without any additional action needed provided however, if the Debtor seeks to sell and/or lease the sand quarry site, the solar facility site, or substantially all of the property of the Debtor at one time, the Debtor shall be required to obtain the written consent of the Liquidating Trustee prior to finalizing any such sale and/or lease. In the event of any disputed regarding any sale of such assets the Bankruptcy Court shall have retained jurisdiction to hear and determine the same.

### 5.12    *Distribution of Assets*

From and after the Effective Date the Distribution Agent shall have the sole power and authority: to (i) make all distributions contemplated by this Plan; and (ii) take any and all other actions reasonably necessary to effectuate the purposes of this Plan.

5.13    *Cancellation of Deeds of Trust and Other Secured Interests*

As set forth in Section 4 above, Secured Creditors shall be receiving substitute collateral through the Liquidating Trust.  The deed of trust held by the Liquidating Trust, for the benefit of various secured and unsecured creditors, and any deed of trust provided to the lender providing Debtor with Priming Financing will be the only secured claims on the Sargent Ranch Property.  As of the Effective Date, all liens and encumbrances on the Sargent Ranch Property in existence prior to the Effective Date shall be eliminated and replaced by the deed of trust held by the Liquidating Trust by and through the Plan and the Confirmation Order.  The order confirming the Plan will thus act to release in particular those certain deeds of trust executed by Sargent Ranch, LLC in favor of Blackhawk Financial dated May 31, 2000, November 6, 2000 and October 1, 2003 along with any assignments thereon.  Such deeds of trust and assignments are particularly listed on Exhibit A attached hereto.

SECTION 6. DISTRIBUTIONS

6.1    *Satisfaction of Claims*

Unless otherwise provided herein, any distributions and deliveries to be made on account of Allowed Claims hereunder shall be in complete settlement, satisfaction and discharge of such Allowed Claims.

6.2    *Manner of Payment Under Plan*

Except as specifically provided herein, at the option of the Distribution Agent, payment to be made hereunder may be made by a check or wire transfer, or as otherwise required or provided in applicable agreements.

6.3    *Exemption from Securities Laws*

The issuance of any securities pursuant to this Plan shall be exempt from any securities laws registration requirements to the fullest extent permitted by section 1145 of the Bankruptcy Code.

6.4    *Setoffs*

The Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim, and the distributions to be made pursuant to this Plan on account of such Claim, Causes of Action of any nature that the Debtor or Reorganized Debtor may hold against the holder of such Allowed Claim; provided that neither the failure to effect a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtor or Reorganized Debtor of any Causes of Action that the Debtor or the Reorganized Debtor may possess against such holder.

6.5    *Special Tax Provisions*

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

## SECTION 7. PROCEDURES FOR DISPUTED CLAIMS

### 7.1    *Objections to Claims*

Other than with respect to Fee Claims, only the Reorganized Debtor shall be entitled to object to Claims, including any Claim which has been listed by the Debtor in the Schedules in an amount not disputed or contingent. Any objections to such Claims (other than Fee Claims) shall be served and filed on or before the later of: (a) ninety (90) days after the Effective Date; (b) thirty (30) days after a request for payment or proof of Claim is properly filed and served upon the Debtor; or (c) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) hereof. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Reorganized Debtor effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a claimant is unknown, by first class mail, postage prepaid, on the signatory of the proof of claim as well as all other representatives identified in the proof of claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Reorganization Case (so long as such appearance has not been subsequently withdrawn). This Plan shall not affect any party's rights to object to Fee Claims.

### 7.2    *Payments and Distributions with Respect to Disputed Claims*

To the extent a Claim is a Disputed Claim, the Distribution Agent shall not be required to make a distribution of the applicable disputed portion of a payment to the holder of such Disputed Claim which would otherwise be payable to the holder of a Disputed Claim. Instead such Disputed Claim shall be reserved for pending allowance or disallowance. In the event that the Disputed Claim is subsequently allowed, the Plan Trust shall thereafter pay the appropriate amount to the holder of the Claim in accordance with the terms of the Plan and in the same manner as any other creditor of the same Class.

## SECTION 8. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1    *General Treatment*

Subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which the Debtor is currently a party are hereby rejected; except for any executory contracts or unexpired leases that (i) have been assumed pursuant to Final Order of the Bankruptcy Court, (ii) are designated specifically or by category as a contract or lease to be assumed on an exhibit to the Plan, as such exhibit may be amended from time to time prior to the Effective Date to include additional or exclude pre-existing contracts and agreements, or (iii) are the subject of a separate motion to assume filed under section 365 of the Bankruptcy Code by the Debtor prior to the Effective Date.

### 8.2    *Cure of Defaults*

Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any executory contract or unexpired lease to be assumed, the Debtor shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code, and consistent with the requirements of section 365 of the Bankruptcy Code, on or before thirty (30) days after the Effective Date, file and serve on parties to executory contracts or unexpired leases to be assumed and other parties in interest a pleading with the Bankruptcy Court listing the cure amounts of all executory contracts or unexpired leases to be assumed. The parties to such executory contracts or unexpired leases to be assumed by the Reorganized Debtor shall have fifteen (15) days from the date of service to object to the cure amounts listed by the Debtor. If an objection is filed with respect to the cure amount due under an executory contract or unexpired lease, the Bankruptcy Court shall hold a hearing to determine the cure amount. Notwithstanding section 8.1 or the foregoing, at all times through the date that is five (5) Business Days after the Bankruptcy Court enters an

order resolving and fixing the amount of a disputed cure amount, the Debtor shall have the right to reject such executory contract or unexpired lease. Any cure amounts, determined pursuant to separate motion and order from the Bankruptcy Court, shall be paid by the Reorganized Debtor and shall not be an obligation of the Liquidating Trust.

8.3    *Rejection Claims*

Except as otherwise ordered by the Bankruptcy Court, in the event that the rejection of an executory contract or unexpired lease by the Debtor pursuant to this Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtor or the Reorganized Debtor, unless a proof of claim has been filed with the Bankruptcy Court and served upon counsel for the Debtor on or before the Rejection Claims Bar Date. If there are no objections to the Rejection Claim, or to the extent the Rejection Claim later becomes an Allowed Claim, the Rejection Claim shall be classified and treated as provided in Sections 3 and 4 of this Plan.

SECTION 9. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

9.1    *Conditions Precedent to Confirmation*

Each of the following is a condition precedent to the occurrence of confirmation of this Plan:

(a)    the Bankruptcy Court shall have entered an order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code; and

(b)    the Bankruptcy Court shall have entered a Confirmation Order.

(c)    the Debtor shall have obtained Court approval for the Priming Financing and such financing shall have funded in an amount necessary to carry out the terms and conditions hereof including the payment in full of administrative claims, Class 5(a) and 5(b) claims and the payment of $1,550,000 for distribution as provided herein.

9.2    *Conditions Precedent to the Effective Date*

Each of the following is a condition precedent to the occurrence of the Effective Date.

1.    The Confirmation Order confirming this Plan, as such Plan may have been amended or modified, in form and substance satisfactory to the Debtor, shall have been entered and docketed by the Bankruptcy Court, and such order shall have become a Final Order and shall provide that:

(i)    the Debtor and Reorganized Debtor are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents contemplated by or described in this Plan;

(ii)    the provisions of the Confirmation Order are non-severable and mutually dependent;

(iii)    the Debtor shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125 and 1126 (b) of the Bankruptcy Code, and any non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation;

(iv)    the Debtor shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under this Plan and, therefore, are not, and on account of such offer, issuance and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under this Plan;

(v)    the plan documents, in form and substance acceptable to the Debtor shall have been executed and delivered by the Reorganized Debtor and such other parties deemed necessary by the Reorganized Debtor, and all conditions precedent thereto shall have been satisfied;

(vi)    the Reorganized Debtor shall have sufficient Cash on hand and/or financing sources to make timely distributions under this Plan;

(vii)    the Debtor shall file all notices and reports, if any, required to be filed, by the Debtor in connection with this Plan's effectiveness;

### 9.3    *Waiver of Conditions Precedent*

Each of the conditions set forth in Section 9.1 of this Plan may be waived in whole or in party by the Debtor without any other notice to parties in interest or notice to or order of the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition may be asserted by the Debtor regardless of the circumstances that give rise to the failure of the condition to be satisfied. The failure of the Debtor or Reorganized Debtor to assert the non-satisfaction of any conditions will not be deemed a waiver of any other rights under this Plan, and each such right will be deemed an ongoing right that may be asserted or waived at any time or from time to time. If the Debtor waives any condition precedent and consummates the Plan, any challenge to the Debtor's waiver shall become moot by consummation of the Plan and will forever foreclose any ability to challenge the Plan.

### 9.4    *Effect of Failure of Conditions*

If all the conditions to effectiveness and the occurrence of the Effective Date have not been satisfied or duly waived on or before the first Business Day that is more than sixty (60) days after the Confirmation Date, or by such later date as is proposed and approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by the Debtor made before the time that all of the conditions have been satisfied or duly waived, the Confirmation Order shall be vacated by the Bankruptcy Court; *provided, however,* that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if all of the conditions to consummation set forth in section 9.1 of this Plan are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to this section 9.4, this Plan shall be null and void in all respects.

### SECTION 10. DEFAULT

### 10.1    *Secured Creditors & Unsecured Creditors in Classes 1, 2, 3, 4, 6 and 7*

A default will occur as to payment of Secured Creditors and/or Unsecured Creditors in Classes 1, 2, 3, 4, 6 and 7 if Debtor fails to make the required distributions to these creditors within ten days of the date due. In the event of any default, the Liquidating Trustee may take any action available to it under applicable state law for breach of contract provided that any such default continues after thirty (30) days notice to the Debtor and their counsel and the failure of the Debtor to cure any such default.

## 10.2    *Priority Claims, Including Priority Tax Claims*

A default will occur as to payment of the Priority Claims (Classes 5(a) and 5(b)) if Debtor fails to make the required distributions to these creditors within ten days of the date due. In the event of any default, Class 3 Unsecured Priority Claimants may take any action available to them under applicable state law for breach of contract provided that any such default continues after thirty (30) days notice to the Debtor and their counsel and the failure of the Debtor to cure any such default.

SECTION 11. EFFECT OF CONFIRMATION 10.1

### 11.1    *Vesting of Assets*

Subject to the terms of sections 11.2 and 11.3 of the Plan, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, except for leases and executory contracts that have not yet been assumed or rejected (which leases and contracts shall be deemed vested when and if assumed), all property of the estate shall vest in the Reorganized Debtor, free and clear of all Claims, liens, encumbrances, charges, and other interests, except as provided herein or in the Confirmation Order. The vesting shall specifically be free and clear of and interests provided Exhibit A hereto. The Reorganized Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided herein.

### 11.2    *Discharge of Claims*

Except as otherwise provided herein or in the Confirmation Order, the rights afforded in this Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against or in the Debtor or any of its Assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as otherwise provided herein, upon the Effective Date, all Claims against the Debtor and old equity interests in the Debtor shall be, and shall be deemed to be, discharged whether or not a proof of Claim or proof of interest was filed with respect thereto.

### 11.3    *Discharge of the Debtor*

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any kind or nature whatsoever against the Debtor or any of its assets or properties, and regardless or whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims. Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor shall be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code. Upon the Effective Date, all holders of Claims shall be forever precluded and enjoined from prosecuting or asserting any such discharged Claim against the Debtor or the Reorganized Debtor.

### 11.4    *Term of Injunctions or Stays*

Unless otherwise provided herein, all injunctions or stays arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 11.5    *Injunction Against Interference With Plan*

Upon the entry of the Confirmation Order, all holders of Claims and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

### 11.6    *Injunction*

Except as otherwise provided in this Plan, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against the Debtor or the Estate are, with respect to any such Claims, permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the Reorganized Debtor or any of their property or any direct or indirect successor in interest to the Debtor or the Reorganized Debtor or any property of any such successor; (b) enforcing, levying, attaching (including, without limitation, any pre judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor or the Reorganized Debtor or any of their property or any direct or indirect successor in interest to the Debtor or the Reorganized Debtor or any property of any such successor; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or the Reorganized Debtor or any of their property or any direct or indirect successor in interest to the Debtor or the Reorganized Debtor or any property of any such successor; and (d) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law.

### 11.7    *Retention of Causes of Action/Reservation of Rights*

(i)    Except as specifically provided herein, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, Claims or Causes of Action that the Debtor may have or may choose to assert on behalf of the Estate in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Claims against any Person, to the extent such Person asserts a cross-claim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, the Reorganized Debtor, or any of their officers, directors, or representatives; (ii) the avoidance of any transfer by or obligation of the Estate or the Debtor or the recovery of the value of such transfer; (iii) the turnover of any property of the estate; and/or (iv) Claims against other third parties.

(ii)    Nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, Avoidance Action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the Petition Date. The Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, or other legal or equitable defenses which the Debtor had immediately prior to the Petition Date as fully as if the Reorganization Case had not been commenced.

## SECTION 12. PLAN TRUST

### 12.1    *Creation of Plan Trust*

On the Effective Date the Liquidating Trust shall be established for the purposes set forth in the Plan, including without limitation (A), to provide the Liquidating Trustee the power and authority to accept the promissory note and deed of trust on the Sargent Ranch Property and to exercise discretion over its collection and (B) for the purpose of distributing assets in accordance with Treasury Regulation Section 301.7701-4(d) and as a "grantor trust" for federal income tax purposes, pursuant to Sections 671 through 679 of the Tax Code.

12.2    *Grant of Promissory Note and Deed of Trust*

In conformance herewith, the Debtor shall grant and record a promissory note and deed of trust in favor of the Liquidating Trust in the amount of $165,000,000 (subject to change as indicated above) and deliver the promissory note to the Liquidating Trustees as of the Effective Date in trust to be held for the benefit of the holders of Claims against the Debtor and to be applied as specified in this Plan, the Confirmation Order, the Plan Documents, and any other orders relating thereto. To the extent the Liquidating Trustee and Reorganized Debtor are unable to agree on any decision relating to the operation of the Liquidating Trust or administration of the Sargent Ranch Property, the Trustee shall be permitted to request, via letter to the Bankruptcy Court, that such dispute be resolved by the Bankruptcy Court either by telephonic conference, hearing or any other means directed by the Bankruptcy Court.

12.3    *Limitation of Liability*

In exercising the rights and duties set forth herein, the Liquidating Trustee shall exercise its best judgment, to the end that the affairs of the Liquidating Trust shall be properly managed and the interests of all the Beneficiaries are safeguarded; but no Trustee shall incur any responsibility or liability by reason of any error of law or of any matter or thing done or suffered or omitted to be done under the Liquidating Trust, except for breaches of fiduciary duty and willful misconduct of such Liquidating Trustee. No claim or cause of action shall lie against any Trustee for any action or lack of action taken by such Liquidating Trustee in reasonable reliance upon the advice of any attorney or other professional engaged or consulted with.

SECTION 13.    RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157 (but this Plan shall in no way expand the jurisdiction otherwise granted to the Bankruptcy Court pursuant 28 U.S.C. §§ 1334 and 157), over all matters arising in, arising under, or related to the Reorganization Case for, among other things, the following purposes:

(a)    To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom.

(b)    To determine any motion, adversary proceeding, avoidance action, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date.

(c)    To ensure that distributions to holders of Allowed Claims are accomplished as provided herein.

(d)    To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim or Administrative Expense Claim.

(e)    To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated.

(f)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court.

(g)    To hear and determine any motion to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

(h)    To hear and determine all Fee Claims.

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing.

(j)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release, injunction or exculpation provisions set forth herein, or to maintain the integrity of this Plan following consummation.

(k)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

(l)     To hear and determine matters concerning state, local, and federal regulations, Claims or taxes.

(m)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

(n)     To enter a final decree closing the Reorganization Case.

(o)     To recover all Assets of the Debtor and property of the estate, wherever located.

## SECTION 14. MISCELLANEOUS PROVISIONS

### 14.1    *Termination or Retention of Professionals*

On the Effective Date, the engagement of each professional retained by the Debtor may be terminated without further order of the Court or act of the parties. The Debtor shall thereafter, without the need for further order of the Bankruptcy Court, be free to retain and compensate one or more professionals. Notwithstanding the foregoing, counsel to the Debtor will continue to have the right to be heard for their respective clients with respect to (a) any applications for allowance of Fee Claims and (b) any contested matters which are pending as of the Effective Date.   Notwithstanding the foregoing the Debtor intends on retaining the Smaha Law Group as post confirmation counsel and the Watley Group pursuant to its approved employment agreement.

### 14.2    *Substantial Consummation*

On the Effective Date, upon the execution and delivery of the plan documents, the Debtor may seek an order from the Bankruptcy Court determining that, this Plan has been substantially consummated pursuant to section 1101 of the Bankruptcy Code. After such determination, administration of the Debtor's estate shall cease as to the operations of the Debtor and distributions to be made under the Plan.

### 14.3    *U.S. Trustee Fees*

The Reorganized Debtor shall make all required quarterly reports to the Bankruptcy Court and to the Office of the United States Trustee.  The Reorganized Debtor shall continue making all required quarterly payments to the United States Trustee until the Debtor obtains an order finding substantial consummation and allowing the Bankruptcy Court to administratively close the Reorganization Case.  The Plan has all distributions made to creditors being made by the Distribution Agent to the beneficiaries of the Liquidating Trust as payments on the promissory note, as such, the Debtor anticipates that the Office of the United States Trustee shall only be entitled to the minimum quarterly payment until such time as an order finding substantial consummation has been entered by the Bankruptcy Court.

14.4    *Amendments*

(a) *Plan Modifications.* This Plan may be amended, modified, or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Claims or Old Equity Interests pursuant to this Plan, the Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

(b) *Other Amendments.* Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court; *provided, however,* that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Old Equity Interests.

14.5    *Revocation or Withdrawal of this Plan*

The Debtor reserves the right to revoke or withdraw this Plan prior to the Effective Date. If the Debtor takes such action, this Plan shall be deemed null and void.

14.6    *Cramdown*

In the event a Class votes against this Plan, and this Plan is not withdrawn as provided above, the Debtor reserves the right to seek a "cram down" of this Plan pursuant to section 1129(b) of the Bankruptcy Code. To the extent any Class is deemed to reject this Plan by virtue of the treatment provided to such Class, this Plan shall be "crammed down" on the claimants within such Class pursuant to section 1129(b) of the Bankruptcy Code.

14.7    *Confirmation Order*

The Confirmation Order shall, and is hereby deemed to, ratify all transactions effected by the Debtor during the period commencing on the Petition Date and ending on the Confirmation Date except for any acts constituting willful misconduct, gross negligence, recklessness or fraud.

14.8    *Severability*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.9    *File Destruction*

After the Effective Date of the Plan, the Debtor shall have the right and ability to destroy confidentially any and all loan files generated by the Debtor prior to the Petition date except to the extent the Debtor is required to retain any such records for any particular length of time pursuant to applicable law.

### 14.10  *Governing Law*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a Plan Document provides otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the principles of conflict of laws thereof.

### 14.11  *Section 1125(e) of the Bankruptcy Code*

The Debtor has, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtor (and each of its respective affiliates, agents, directors, officers, employees, advisors and attorneys) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale and purchase of the securities offered and sold under this Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or offer, issuance, sale or purchase of the securities offered and sold under this Plan.

### 14.12  *Expedited Determination*

The Reorganized Debtor or the Plan Trust is hereby authorize to file a request for expedited determination under section 502(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtor, Reorganized Debtor or the Plan Trust, as the case may be.

### 14.13  *Time Bar to Payments*

The Distribution Agent shall stop payment on any distribution check that has not cleared through the Disbursement Account within ninety (90) days of the date of issuance thereof. Requests for re-issuance of any such checks shall be made directly to the Distribution Agent by the holder of the Allowed Claim with respect to which such check was issued. Any claim in respect of such voided check shall be made within one hundred and eighty (180) days after the date of the issuance of such voided check. If no claim is made as provided herein, all Claims in respect of voided checks shall be discharged and forever barred. The amount represented by such unclaimed checks, and those undeliverable, after commercially reasonable diligence, shall be distributed pro-rata to the remaining holders of Allowed Claims, pursuant to the terms of this Plan. Distributions to holders of Allowed Claims shall be made to their last known address, which shall be presumed to be as set forth on the proof of claim filed by such Claimant, or if no proof of claim was filed, on the Schedules filed by the Debtor, as may have been amended from time to time, unless a Claimant shall have supplied a new or corrected address in writing to the Distribution Agent within two weeks prior to a Distribution to permit the Distribution Agent to revise its records accordingly.

### 14.14  *Fractional Distributions*

Notwithstanding anything to the contrary contained in the Plan, no Cash payments of fractions of cents shall be made. Fractional cents shall be rounded to the nearest whole cents.

### 14.15  *Time*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 14.16  *Waiver of Bankruptcy Rule 7062*

The Confirmation Order shall include: (i) a finding that Bankruptcy Rule 7062 shall not apply to the Confirmation Order; and (ii) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

14.17   *Compliance with Tax Requirements*

In connection with the Plan, the Debtor, the Reorganized Debtor and the Plan Trustee, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and any distributions under the Plan, shall be subject to such withholding and reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim that is to receive a distribution under the Plan, shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligations, on account of any distributions. The Plan Trustees have the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to the Plan Trustees for the payment of any tax obligations.

14.18   *Notices*

All notices, requests and demands to or upon the Debtor the Reorganized Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> If to Debtor:
>
> Wayne F. Pierce
> Sargent Ranch, LLC
> 8031 La Jolla Scenic Drive North
> La Jolla, CA. 92037
>
> and
>
> John L. Smaha, Esq., Bar No. 95855
> SMAHA LAW GROUP, APC
> 7860 Mission Center Ct., Ste. 100
> San Diego, CA 92108
> T: (619) 688-1557
> F: (619) 688-1558
>
> and
>
> The Watley Group, LLC
> Attn: John Bryan
> 1801 Century Park East, Suite 1830
> Los Angeles, CA 90067
> T: (310) 777-8889
> F: (310) 226-8553

14.19   *Exhibits*

All exhibits and schedules to this Plan, including any exhibits, are incorporated by reference into this Plan and are made a part hereof as if more fully set forth herein.

14.20   *Binding Effect*

The provisions of this Plan (including the exhibits and schedules to, and all documents and agreements executed pursuant to or in connection with this Plan) and the Confirmation Order shall be binding on (i) the Debtor, (ii) all holders of Claims against and Old Equity Interests in the Debtor, whether or not impaired under the Plan and whether or not such holders have accepted or rejected the Plan, (iii) each Person or entity receiving, retaining or otherwise acquiring property pursuant to the terms of the Plan, (iv) any non-Debtor party to an executory contract or unexpired lease with the Debtor, (v) and Person or entity making an appearance in this Reorganization Case, and (vi) each of the foregoing's respective heirs, successors, assigns, executors, administrators, officers, directors and agents.

Dated: September 22, 2010                    /s/ John L. Smaha

                                             John L. Smaha, Esq., Bar No. 95855
                                             SMAHA LAW GROUP, APC
                                             7860 Mission Center Ct., Ste. 100
                                             San Diego, CA 92108
                                             T: (619) 688-1557
                                             F: (619) 688-1558
                                             *Attorneys for Sargent Ranch, LLC.*

W:\Sargent Ranch\Plan and D.S\100.Plan.9-22-10.rev.wpd

# EXHIBIT A

File No: 68141307

**SCHEDULE B – Continued**

48. A deed of trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby.

| | |
|---|---|
| Amount: | $15,000,000.00 |
| Dated: | May 31, 2000 |
| Trustor: | Sargent Ranch LLC |
| Trustee: | First American Title Guaranty Company |
| Beneficiary: | Ian G. Koblick and Tony A. Koblick, Co-Trustees, etal |
| Recorded: | June 12, 2000, as Series No. 15277977, of Official Records |

An agreement to modify the terms and provisions of said deed of trust as therein provided
| | |
|---|---|
| New Amount: | $25,000,000.00 |
| Recorded: | January 31, 2001, as Series No. 15545443, of Official Records |

An assignment of an undivided 4.16666667% of the assignor's undivided interest of the Assignors 100.0%; in the beneficial interest under said deed of trust which names
| | |
|---|---|
| As Assignor: | Burton O. Benson, Trustee |
| As Assignee: | Discount Fabrics Profit Sharing Plan |
| Recorded: | July 19, 2000 as Series No. 15321040 of Official Records |

An assignment of an undivided 6.08695652% of the assignor's of the remaining 7.6666666% interest; in the beneficial interest under said deed of trust which names
| | |
|---|---|
| As Assignor: | Burton O. Benson, Trustee |
| As Assignee: | First Blackhawk Financial Corp. Defined Benefit Pension Plan |
| Recorded: | July 19, 2000 as Series No. 15321040 of Official Records |

An assignment of an undivided 7.40740740% of the assignor's remaining 7.20% interest; in the beneficial interest under said deed of trust which names
| | |
|---|---|
| As Assignor: | Burton O. Benson, Trustee |
| As Assignee: | Bruce K. Palmer as Trustee under the Trust Agreement dated December 30, 1992, for the benefit of Bruce Kenneth Palmer |
| Recorded: | August 18, 2000 as Series No. 15363289 of Official Records |

An assignment of an undivided 25% of the assignor's remaining 100% interest in the beneficial interest under said deed of trust which names
| | |
|---|---|
| As Assignor: | Terrence E. Howland and Lisa Beth Howland |
| As Assignee: | Herbert L. Sillivan and Victoria L. Sillivan, Trustees of the Herbert L. Sillivan and Victoria L. Sillivan Revocable Living Trust, created 8/27/93 |
| Recorded: | October 6, 2000 as Series No. 15415312 of Official Records |

An assignment of an undivided 100% of the assignor's interest in the beneficial interest under said deed of trust which names
| | |
|---|---|
| As Assignor: | Del Valle Pet Hospital, Inc., Pension Plan and Del Valle Pet Hospital Inc., Profit Sharing Plan and Del Valle Pet Hospital, Inc. Pension Plan, Voluntary Account by Martin H. Plone |
| As Assignee: | PENSCO Pension Services, Inc., FBO Martin H. Plone, Acct. No. PL020 |
| Recorded: | October 6, 2000 as Series No. 15415313 of Official Records |

An assignment of an undivided 2.0% of the assignor's interest; in the beneficial interest under said deed of trust which names
| | |
|---|---|
| As Assignor: | First Blackhawk Financial Corp. and Arthur I. Appleton, Jr., CEO, Greg Griffin, CEO |
| As Assignee: | Jim Schreader, a single man |
| Recorded: | February 20, 2001 as Series No. 15564308 of Official Records |

CLTA Preliminary Report Form (Rev 1/1/95)

File No: 68141307

## SCHEDULE B - Continued

And re-recorded:                July 14, 2005 as Series No. 18467838 of Official Records

An assignment of an undivided .38% of the assignor's interest; in the beneficial interest under
said deed of trust which names
As Assignor:                    First Blackhawk Financial Corp. Arthur I. Appleton, Jr. CEO and
                                Greg Griffin, CEO
As Assignee:                    Bruce K. Palmer, Trustee under the Trust Agreement dated
                                December 30, 1992 for the benefit of Bruce Kenneth Palmer
Recorded:                       February 20, 2001 as Series No. 15564308 of Official Records

And re-recorded:                July 14, 2005 as Series No. 18467838 of Official Records

An assignment of an undivided .40% interest of the assignor's interest; in the beneficial
interest under said deed of trust which names
As Assignor:                    First Blackhawk Financial Corp., Arthur I. Appleton, Jr., CEO, Greg
                                Griffin, CEO
As Assignee:                    V. Lea Sasak, a single person
Recorded:                       February 20, 2001 as Series No. 15564307 of Official Records

And Re-Recorded:                July 14, 2005 as Series No. 18467837 of Official Records

An assignment of an undivided 2.0% interest of the assignor's interest; in the beneficial
interest under said deed of trust which names
As Assignor:                    First Blackhawk Financial Corp., Arthur I. Appleton, Jr., CEO, Greg
                                Griffin, CEO
As Assignee:                    Jim Schreader, a single man
Recorded:                       February 20, 2001 as Series No. 15564307 of Official Records

And Re-Recorded:                July 14, 2005 as Series No. 18467837 of Official Records

An assignment of an undivided .8% interest of the assignor's interest;  in the beneficial interest
under said deed of trust which names
As Assignor:                    First Blackhawk Financial Corp., Arthur I. Appleton, Jr., CEO, Greg
                                Griffin, CEO
As Assignee:                    Ricardo Pimienta, a single man
Recorded:                       February 20, 2001 as Series No. 15564307 of Official Records

And Re-Recorded:                July 14, 2005 as Series No. 18467837 of Official Records

An assignment of an undivided .4% interest of the assignors interest; in the beneficial interest
under said deed of trust which names
As Assignor:                    First Blackhawk Financial Corp., Arthur I. Appleton, Jr., CEO, Greg
                                Griffin, CEO
As Assignee:                    Gunther J. DeGroot and Kathryn E. DeGroot, Trustees of the
                                DeGroot Living Trust U/A dated September 8, 1986
Recorded:                       February 20, 2001 as Series No. 15564307 of Official Records

And Re-Recorded:                July 14, 2005 as Series No. 18467837 of Official Records

An assignment of an undivided 100.0% interest of the assignors 100.0% interest; in the
beneficial interest under said deed of trust which names
As Assignor:                    Terrance E. Howland and Lisa Beth Howland
As Assignee:                    Terrance E. Howland and Lisa Beth Howland, or Successors, as
                                trustees of the Terrance E. Howland and Lisa Beth Howland
                                Revocable Trust
Recorded:                       February 20, 2001 as Series No. 15564306 of Official Records

File No: 68141307

## SCHEDULE B - Continued

An assignment of an undivided 49.6031746% of the assignors undivided 100.0% interest; in the beneficial interest under said deed of trust which names

As Assignor:        Bruce K. Palmer, as Trustee under the Trust Agreement dated December 30, 1992 for the benefit of Bruce Kenneth Palmer by Bruce K. Palmer, Trustee

As Assignee:        PENSCO Pension Services, Inc., FBO Bruce K. Palmer, Account No. PA-217

Recorded:           February 20, 2001 as Series No. 15564305 of Official Records

An assignment of an undivided 604% interest of the Assignor's interest; in the beneficial interest under said deed of trust which names

As Assignor:        First Blackhawk Financial Corp., Greg Griffin, CEO

As Assignee:        Bruce K. Palmer, Trustee under the Trust Agreement dated December 30, 1992 for the benefit of Bruce Kenneth Palmer

Recorded:           March 13, 2001 as Series No. 15589939 of Official Records

And Re-Recorded:    July 14, 2005 as Series No. 18467839 of Official Records

An assignment of an undivided .10% interest of the assignors interest; in the beneficial interest under said deed of trust which names

As Assignor:        First Blackhawk Financial Corp., Greg Griffin, CEO

As Assignee:        Montgomery Street Partners, a General Partnership

Recorded:           March 13, 2001 as Series No. 15589939 of Official Records

And Re-Recorded:    July 14, 2005 as Series No. 18467839 of Official Records

An assignment of an undivided 1.2% interest of the assignor's interest; in the beneficial interest under said deed of trust which names

As Assignor:        First Blackhawk Financial Corp., Greg Griffin, CEO

As Assignee:        Ricardo Pimienta, a single man

Recorded:           March 13, 2001 as Series No. 15589939 of Official Records

And Re-Recorded:    July 14, 2005 as Series No. 18467839 of Official Records

An assignment of an undivided .04% interest of the assignor's interest; in the beneficial interest under said deed of trust which names

As Assignor:        First Blackhawk Financial Corp., Arthur I. Appleton, Jr., CEO and Greg Griffin, CEO

As Assignee:        Trust Company of America, FBO Gary Jones, Acct. No. 24363

Recorded:           March 26, 2001 as Series No. 15605489 of Official Records

And Re-Recorded:    July 14, 2005 as Series No. 18467840 of Official Records

An assignment of an undivided .0026% of the assignor's interest; in the beneficial interest under said deed of trust which names

As Assignor:        First Blackhawk Financial Corp., Arthur I. Appleton, Jr., CEO and Greg Griffin, CEO

As Assignee:        Trust Company of America, FBO Barbara L. Jones, Acct. #25360

Recorded:           March 26, 2001 as Series No. 15605489 of Official Records

And Re-Recorded:    July 14, 2005 as Series No. 18467840 of Official Records

An assignment of an undivided .80% of the assignor's interest; in the beneficial interest under said deed of trust which names

File No: 68141307

## SCHEDULE B – Continued

As Assignor:              First Blackhawk Financial Corp., Arthur I. Appleton, Jr., CEO and
                          Greg Griffin, CEO

As Assignee:              PENSCO Pension Services, Inc., FBO F. James Fulton, Acct. #FU-
                          043

Recorded:                 March 30, 2001 as Series No. 15615261 of Official Records

And Re-Recorded:          July 14, 2005 as Series No. 18467841 of Official Records

An assignment of an undivided .60% of the assignor's interest; in the beneficial interest under
said deed of trust which names

As Assignor:              First Blackhawk Financial Corp., Arthur I. Appleton, Jr., CEO and
                          Greg Griffin, CEO

As Assignee:              Bruce K. Palmer, Trustee under the Trust Agreement dated
                          December 15, 1992 for the benefit of Bruce Kenneth Palmer

Recorded:                 March 30, 2001 as Series No. 15615261 of Official Records

And Re-Recorded:          July 14, 2005 as Series No. 18467841 of Official Records

An assignment of an undivided 0.40000000% of the assignor's interest; in the beneficial
interest under said deed of trust which names

As Assignor:              First Blackhawk Financial Corp. and Arthur I. Appleton, Jr. CEO

As Assignee:              Thomas W. Marckwardt and Ginger C. Marckwardt, Trustees,
                          Marckwardt Trust dated February 15, 1994

Recorded:                 May 23, 2001 as Series No. 15690659 of Official Records

An assignment of an undivided 0.40000000% of the assignor's interest; in the beneficial
interest under said deed of trust which names

As Assignor:              First Blackhawk Financial Corp. and Arthur I. Appleton, Jr. CEO

As Assignee:              PENSCO Pension Services, Inc., FBO Donald C. Drennan, Acct. DR-
                          003

Recorded:                 May 23, 2001 as Series No. 15690659 of Official Records

An assignment of an undivided 1.20000000% of the assignor's interest; in the beneficial
interest under said deed of trust which names

As Assignor:              Terrence E. Howland, Trustee and Lisa Beth Howland, Trustee

As Assignee:              Ricardo Pimienta, a single man

Recorded:                 May 23, 2001 as Series No. 15690658 of Official Records

An assignment of an undivided 0.88000000% of the assignor's interest in the beneficial interest
under said deed of trust which names

As Assignor:              First Blackhawk Financial Corp. and Arthur I. Appleton, Jr. CEO

As Assignee:              PENSCO Pension Services Inc., FBO Michael E. Pegler, Acct. #PE-
                          172

Recorded:                 May 23, 2001 as Series No. 15690660 of Official Records

An assignment of an undivided 0.20000000% of the assignor's interest in the beneficial interest
under said deed of trust which names

As Assignor:              First Blackhawk Financial Corp. and Arthur I. Appleton, Jr. CEO

As Assignee:              Herbert L. Sillivan and Victoria L. Sillivan, Trustees of the Herbert L.
                          Sillivan and Victoria L. Sillivan Revocable Living Trust, created on
                          August 27, 1993

Recorded:                 May 23, 2001 as Series No. 15690660 of Official Records

An assignment of an undivided 0.400000000% of the assignor's interest; in the beneficial
interest under said deed of trust which names

As Assignor:              First Blackhawk Financial Corp. and Arthur I. Appleton, Jr. CEO

CLTA Preliminary Report Form (Rev 1/1/95)

File No: 68141307

## SCHEDULE B - Continued

As Assignee:          Martin H. Plone, an unmarried man
Recorded:            May 23, 2001 as Series No. 15690660 of Official Records

An assignment of an undivided 0.40000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:          First Blackhawk Financial Corp. and Arthur I. Appleton, Jr. CEO
As Assignee:          Thomas W. Marckwardt and Ginger C. Marckwardt, Trustees Marckwardt Trust dated February 15, 1994
Recorded:            May 23, 2001 as Series No. 15690660 of Official Records

An assignment of an undivided 0.6800000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:          PENSCO Pension Services, Inc., John Beater, VP
As Assignee:          PENSCO Pension Services, Inc. FBO Bruce K. Palmer, Acct. #PA-222
Recorded:            June 15, 2001 as Series No. 15727783 of Official Records

An assignment of an undivided 0.4000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:          Grace R. Hougey, Trustee, Hougey Family Revocable Trust DTD 10-20-92 (Survivors Trust)
As Assignee:          Grace R. Hougey, Trustee of the Harold H. Hougey Irrevocable Trust, dated 4/16/2000
Recorded:            June 15, 2001 as Series No. 15727782 of Official Records

An assignment of an undivided 0.720000000% interest in the beneficial interest under said deed of trust which names
As Assignor:          First Blackhawk Financial Corp. by: Arthur I. Appleton, Jr. CEO
As Assignee:          PENSCO Pension Services Inc., FBO Michael E. Pegler, Acct. #PE-172
Recorded:            June 26, 2001 as Series No. 15743290 of Official Records

An assignment of an undivided 0.40000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:          First Blackhawk Financial Corp. and Arthur I. Appleton, Jr. CEO
As Assignee:          V. Lea Sasak, a single person
Recorded:            August 9, 2001 as Series No. 15819213 of Official Records

An assignment of an undivided 0.08000000% of the assignors interest; in the beneficial interest under said deed of trust which names
As Assignor:          First Blackhawk Financial Corp. and Arthur I. Appleton, Jr. CEO
As Assignee:          Eric B. Benson, an unmarried man
Recorded:            August 9, 2001 as Series No. 15817641 of Official Records.

An assignment of an undivided 0.72000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:          Triex Ltd. By Director: Letitia Cummins and Director Anne Smith
As Assignee:          Goldfinger Investments Ltd., a British Virgin Island Corp.
Recorded:            August 9, 2001 as Series No. 15817640 of Official Records

An assignment of an undivided 0.80000000% of the assignor's interest in the beneficial interest under said deed of trust which names
As Assignor:          Bruce J. Palmer as trustee under the Trust Agreement dtd 12/30/92, for the benefit of Bruce Kenneth Palmer
As Assignee:          World Health Associates Inc., a Nevada Corp.
Recorded:            August 9, 2001 as Series No. 15817639 of Official Records

File No: 68141307

## SCHEDULE B - Continued

An assignment of an undivided 0.20000000% of the assignor's interest; in the beneficial interest under said deed of trust which names

As Assignor:             First Blackhawk Financial Corp. and Arthur I. Appleton, Jr.
As Assignee:            Turbo Financial Inc., a Nevada Corp.
Recorded:                August 9, 2001 as Series No. 15817638 of Official Records

An assignment of an undivided 316% of the assignor's interest; in the beneficial interest under said deed of trust which names

As Assignor:             First Blackhawk Financial Corp. and Arthur I. Appleton, Jr.
As Assignee:            Bruce K. Palmer as Trustee under the Trust Agreement dated December 30, 1992 for the benefit of Bruce Kenneth Palmer
Recorded:                October 9, 2001 as Series No. 15901728 of Official Records

And Re-Recorded:       July 14, 2005 as Series No. 18467842 of Official Records

An assignment of an undivided 0.08000000% of the assignor's interest; in the beneficial interest under said deed of trust which names

As Assignor:             First Blackhawk Financial Corp. and Arthur I. Appleton, Jr.
As Assignee:            PENSCO Pension Services Inc., FBO Bruce K. Palmer, Acct. No. PA-217
Recorded:                October 9, 2001 as Series No. 15901728 of Official Records

And Re-Recorded:       July 14, 2005 as Series No. 18467842 of Official Records

An assignment of an undivided 0.00400000% of the assignor's interest; in the beneficial interest under said deed of trust which names

As Assignor:             First Blackhawk Financial Corp. and Arthur I. Appleton, Jr.
As Assignee:            PENSCO Pension Services, Inc., Bruce K. Palmer, Acct. No. Pa-222 Sep IRA
Recorded:                October 9, 2001 as Series No. 15901728 of Official Records

And Re-Recorded:       July 14, 2005 as Series No. 18467842 of Official Records

An assignment of an undivided 0.4000000% of the assignor's interest; in the beneficial interest under said deed of trust which names

As Assignor:             First Blackhawk Financial Corp. and Arthur I. Appleton, Jr.
As Assignee:            Martin A. Parese, Jr. and Laurie S. Parese, husband and wife as joint tenants
Recorded:                October 9, 2001 as Series No. 15901728 of Official Records

And Re-Recorded:       July 14, 2005 as Series No. 18467842 of Official Records

An assignment of an undivided 0.40000000% of the assignor's interest; in the beneficial interest under said deed of trust which names

As Assignor:             First Blackhawk Financial Corp. and Arthur I. Appleton, Jr.
As Assignee:            Marjorie L. White, an unmarried woman and Janice L. Pegler, a married woman as joint tenants
Recorded:                October 9, 2001 as Series No. 15901728 of Official Records

And Re-Recorded:       July 14, 2005 as Series No. 18467842 of Official Records

An assignment of an undivided 0.002136% of the assignor's interest; in the beneficial interest under said deed of trust which names

As Assignor:             PENSCO Pension Services, Inc. FBO Bruce K. Palmer, #PA217 (SEP IRA) by John Beater, V. President, PENSCO Pension Services, Inc. FBO Bruce K. Palmer, #PA-217 (SEP-IRA), by Dave Dean Vice President

File No: 68141307

## SCHEDULE B - Continued

As Assignee:              First Blackhawk Financial Corp., a California corporation
Recorded:                 November 8, 2001 as Series No. 15952633 of Official Records

And Re-Recorded:          August 2, 2005 as Series No. 18505662 of Official Records

An assignment of an undivided 1.000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:              First Blackhawk Financial Corp., Greg Griffin, President
As Assignee:              Thomas J. Pletcher, a married man
Recorded:                 November 8, 2001 as Series No. 15952634 of Official Records

An assignment of an undivided 0.00040400% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:              First Blackhawk Financial Corp., Arthur I. Appleton, Jr.
As Assignee:              Bruce K. Palmer as Trustee under the Trust Agreement dated December 30, 1992, for the benefit of Bruce Kenneth Palmer
Recorded:                 November 8, 2001 as Series No. 15952632 of Official Records

An assignment of an undivided 0.001732% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:              First Blackhawk Financial Corp., Arthur I. Appleton, Jr.
As Assignee:              PENSCO Pension Services, Inc., Bruce K. Palmer, Acct. No. PA-222 Sep IRA
Recorded:                 November 8, 2001 as Series No. 15952632 of Official Records

An assignment of an undivided 0.30000000% of the assignor's interest;  in the beneficial interest under said deed of trust which names
As Assignor:              First Blackhawk Financial Corp., Arthur I. Appleton, Jr. CEO
As Assignee:              Paulina Pullam McGill and William Page Pulliam
Recorded:                 November 16, 2001 as Series No. 15966256 of Official Records

An assignment of an undivided 2.00000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:              John S. Appleton
As Assignee:              Richard R. Bruce and Susan I. Bruce, husband and wife
Recorded:                 July 14, 2005 as Series No. 18467843 of Official Records

An assignment of an undivided 0.48000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:              First Blackhawk Financial Corp., Greg Griffin, CEO
As Assignee:              Ethel M. Blake, Trustee of the Ethel M. Blake Trust of 1991
Recorded:                 July 14, 2005 as Series No. 18467844 of Official Records

An assignment of an undivided 0.28000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:              Greg Griffin, CEO
As Assignee:              Ethel M. Blake, Trustee of the Ethel M. Blake Trust of 1991
Recorded:                 July 14, 2005 as Series No. 18467845 of Official Records

An assignment of an undivided 0.02000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:              First Blackhawk Financial Corp, Arthur I. Appleton, Jr.
As Assignee:              PENSCO Pension Services, Inc. FBO Bruce K. Palmer, Acct. No. PL-217
Recorded:                 July 14, 2005 as Series No. 18467846 of Official Records

File No: 68141307

## SCHEDULE B - Continued

An assignment of an undivided 0.03840000% of the assignor's interest; in the beneficial interest under said deed of trust which names

As Assignor:               Grace R. Hougey, Trustee of the Hougey Family Revocable Trust, dated 10/20/92
As Assignee:               Bruce K. Palmer as Trustee under the Trust Agreement dated December 30, 1992 for the benefit of Bruce Kenneth Palmer
Recorded:                  July 14, 2005 as Series No. 18467847 of Official Records

An assignment of an undivided 0.03752800% of the assignor's interest; in the beneficial interest under said deed of trust which names

As Assignor:               Grace R. Hougey, Trustee of the Hougey Family Revocable Trust, dated 10/20/92
As Assignee:               PENSCO Pension Services Inc., FBO Bruce K. Palmer, Acct. No. Pa-217
Recorded:                  July 14, 2005 as Series No. 18467847 of Official Records

An assignment of an undivided 0.00407200% of the assignor's interest' in the beneficial interest under said deed of trust which names

As Assignor:               Grace R. Hougey, Trustee of the Hougey Family Revocable Trust, dated 10/20/92
As Assignee:               PENSCO Pension Services Inc., FBO Bruce K. Palmer, Acct. No. Pa-222
Recorded:                  July 14, 2005 as Series No. 18467847 of Official Records

An assignment of an undivided 0.40000000% of the assignor's interest in the beneficial interest under said deed of trust which names

As Assignor:               Diane Digness
As Assignee:               Gunther J. DeGroot and Kathryn E. DeGroot, Trustees of the DeGroot Living Trust U/A dated September 8, 1986
Recorded:                  July 14, 2005 as Series No. 18467848 of Official Records

An assignment of an undivided 0.40000000% interest in the beneficial interest under said deed of trust which names

As Assignor:               Diane Digness
As Assignee:               Ronald P. Elvidge, a married man as his sole and separate property
Recorded:                  July 14, 2005 as Series No. 18467849 of Official Records

An assignment of an undivided 0.60000000% of the assignor's interest being a total of $150,000.00; in the beneficial interest under said deed of trust which names

As Assignor:               William D. McLetchie (as to $100,000) and Roberta Green (as to $50,000)
As Assignee:               Ronald P. Elvidge, a married man as his sole and separate property
Recorded:                  July 14, 2005 as Series No. 18467850 of Official Records

An assignment of an undivided .10000000% of the assignor's interest; in the beneficial interest under said deed of trust which names

As Assignor:               Elizabeth A. Doerr-Black
As Assignee:               ERG-BOB Retirement Trust
Recorded:                  July 14, 2005 as Series No. 18467810 of Official Records

An assignment of an undivided 3.20000000% of the assignor's interest; in the beneficial interest under said deed of trust which names

As Assignor:               Richard R. Bruce and Susan I. Bruce
As Assignee:               Richard R. Bruce and Susan I. Bruce, Trustees or Successor Trustee of the Richard R. Bruce and Susan I. Bruce Revocable Trust dated September 3, 2003
Recorded:                  July 14, 2005 as Series No. 18467809 of Official Records

CLTA Preliminary Report Form (Rev 1/1/95)

File No: 68141307

## SCHEDULE B – Continued

An assignment of an undivided 1.00000000% of the assignor's interest; in the beneficial interest under said deed of trust which names

| | |
|---|---|
| As Assignor: | Jacob A. Chapman, Trustee and Gale S. Chapman, Trustee |
| As Assignee: | Porter A. Hurt, Trustee Porter A. Hurt Living Trust, dated 10/1991 |
| Recorded: | July 14, 2005 as Series No. 18467808 of Official Records |

An assignment of an undivided 1.4000000% of the assignor's interest; in the beneficial interest under said deed of trust which names

| | |
|---|---|
| As Assignor: | Jacob A. Chapman, Trustee and Gale S. Chapman, Trustee |
| As Assignee: | Mary Marbury Bowie, a single woman |
| Recorded: | July 14, 2005 as Series No. 18467807 of Official Records |

An assignment of an undivided 0.40000000% of the assignor's interest; in the beneficial interest under said deed of trust which names

| | |
|---|---|
| As Assignor: | Bruce K. Palmer, Trustee |
| As Assignee: | Los Amigos V, a partnership |
| Recorded: | July 14, 2005 as Series No. 18467806 of Official Records |

An assignment of an undivided 0.20000000% of the assignor's interest; in the beneficial interest under said deed of trust which names

| | |
|---|---|
| As Assignor: | Lawrence E. Anderson, TTRR, UTD 8/27/1979 |
| As Assignee: | First Trust Corp., Trustee, Frederick E. Bussey, Acct. No. J1325760001 |
| Recorded: | July 14, 2005 as Series No. 18467805 of Official Records |

An assignment of an undivided 0.20000000% of the assignor's interest; in the beneficial interest under said deed of trust which names

| | |
|---|---|
| As Assignor: | Patricia J. Smith |
| As Assignee: | Patricia J. Bussey, Trustee of the Patricia J. Bussey Separate Property Trust dated November 5, 1999 |
| Recorded: | July 14, 2005 as Series No. 18467804 of Official Records |

An assignment of an undivided 2.50000000% of the assignor's interest; in the beneficial interest under said deed of trust which names

| | |
|---|---|
| As Assignor: | Trust co. of America C/F Albert J. Kralik, #88846 |
| As Assignee: | PENSCO Pension Services, Inc., FBO Albert J. Kralik, Acct. #KR081 |
| Recorded: | July 14, 2005 as Series No. 18467803 of Official Records |

An assignment of an undivided 0.40000000% of the assignor's interest; in the beneficial interest under said deed of trust which names

| | |
|---|---|
| As Assignor: | Ronald C. Blake, Trustee |
| As Assignee: | Debra Gewertz, a married woman as her sole and separate property |
| Recorded: | July 19, 2005 as Series No. 18480765 of Official Records |

An assignment of an undivided 0.52000000% of the assignor's interest; in the beneficial interest under said deed of trust which names

| | |
|---|---|
| As Assignor: | Grace R. Hougey, Trustee |
| As Assignee: | Arthur Jeffrey Appleton, a single man |
| Recorded: | July 19, 2005 as Series No. 18480766 of Official Records |

An assignment of an undivided 0.40000000% of the assignor's interest; in the beneficial interest under said deed of trust which names

| | |
|---|---|
| As Assignor: | PENSCO Trust Company, Inc., Custodian FBO G. Katherine Meyer, #ME-121 |
| As Assignee: | Arthur Jeffrey Appleton, a single man |

File No: 68141307

## SCHEDULE B - Continued

Recorded:                    July 19, 2005 as Series No. 18480767 of Official Records

An assignment of an undivided 0.15000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:                Bruce K. Palmer, Trustee
As Assignee:                Gary F. Griffin, Trustee of the Gary F. Griffin Trust, dated January
                            31, 1992
Recorded:                   July 19, 2005 as Series No. 18480764 of Official Records

An assignment of an undivided 0.14/0000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:                Gary F. Griffin, Trustee
As Assignee:                PENSCO Pension Services, Inc., FBO Bruce K. Palmer, Acct. #PA-
                            217
Recorded:                   July 19, 2005 as Series No. 18480763 of Official Records

An assignment of an undivided 0.00900000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:                Gary F. Griffin, Trustee
As Assignee:                PENSCO Pension Services, Inc., FBO Bruce K. Palmer, Acct. #PA-
                            222
Recorded:                   July 19, 2005 as Series No. 18480763 of Official Records

An assignment of an undivided 0.40000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:                Bruce K. Palmer, Trustee
As Assignee:                PENSCO Pension Services, Inc., FBO Albert J. Kralik, Acct. #KR-081
Recorded:                   July 19, 2005 as Series No. 18480762 of Official Records

An assignment of an undivided 0.80000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:                PENSCO Pension Services, Inc. FBO R. James Fulton, Acct. FU-043
                            Tom W. Anderson, President of PENSCO Trust
As Assignee:                Richard G. Williams, a married man, as his sole and separate
                            property
Recorded:                   July 19, 2005 as Series No. 18480761 of Official Records

An assignment of an undivided 0.10000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:                Turbo Financial Inc., Mynette Boykin, Director
As Assignee:                Patricia J. Bussey, Trustee of The Patricia J. Bussey Separate
                            Property Trust dated November 5, 1999
Recorded:                   July 19, 2005 as Series No. 18480760 of Official Records

An assignment of an undivided 1.000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:                Thomas J. Pletcher
As Assignee:                Ronald P. Elvidge, a married man as his sole and separate property
Recorded:                   July 19, 2005 as Series No. 18480759 of Official Records

An assignment of an undivided 0.40000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
As Assignor:                Bruce K. Palmer, Trustee
As Assignee:                Kenneth I. McGill and Paulina P. McGill, Trustees of the McGill 1984
                            Trust
Recorded:                   August 2, 2005 as Series No. 18505665 of Official Records

File No: 68141307

## SCHEDULE B – Continued

An assignment of an undivided 0.20000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
| | |
|---|---|
| As Assignor: | Bruce K. Palmer, Trustee |
| As Assignee: | Paulina Pulliam McGill and William Page Pulliam |
| Recorded: | August 2, 2005 as Series No. 18505665 of Official Records |

An assignment of an undivided 0.80000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
| | |
|---|---|
| As Assignor: | John S. Appleton |
| As Assignee: | Richard R. Bruce and Susan I. Bruce, husband and wife |
| Recorded: | August 2, 2005 as Series No. 18505664 of Official Records |

An assignment of an undivided 0.03493532% of the assignor's interest in the beneficial interest under said deed of trust which names
| | |
|---|---|
| As Assignor: | Turbo Financial Inc., Mynette, Boykin Director |
| As Assignee: | PENSCO Pension Services, Inc., FBO Bruce K. Palmer, #PA217 |
| Recorded: | August 2, 2005 as Series No. 18505663 of Official Records |

An assignment of an undivided 0.000232872% of the assignor's interest; in the beneficial interest under said deed of trust which names
| | |
|---|---|
| As Assignor: | Turbo Financial Inc., Mynette, Boykin Director |
| As Assignee: | PENSCO Pension Services, Inc FBP Bruce K. Palmer #PA222 |
| Recorded: | August 2, 2005 as Series No. 18505663 of Official Records |

An assignment of an undivided 0.06273596% of the assignor's interest; in the beneficial interest under said deed of trust which names
| | |
|---|---|
| As Assignor: | Turbo Financial Inc., Mynette, Boykin Director |
| As Assignee: | Bruce K. Palmer, Trustee under the Trust Agreement dated December 30, 1992 for the benefit of Bruce K. Palmer |
| Recorded: | August 2, 2005 as Series No. 18505663 of Official Records |

An assignment of an undivided 0.40000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
| | |
|---|---|
| As Assignor: | Thomas W. Marckwardt, Trustee and Ginger C. Marckwardt, Trustee |
| As Assignee: | First Blackhawk Financial Corp, a California corporation |
| Recorded: | August 2, 2005 as Series No. 18505661 of Official Records |

An assignment of an undivided 0.40000000% of the assignor's interest; in the beneficial interest under said deed of trust which names
| | |
|---|---|
| As Assignor: | Marjorie L. White and Janice L. Pegler |
| As Assignee: | Michael E. Pegler and Janice L. Pegler, husband and wife |
| Recorded: | August 8, 2005 as Series No. 18513399 of Official Records |

File No: 68141307

## SCHEDULE B – Continued

49. A deed of trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby.

| | |
|---|---|
| Amount: | $15,000,000.00 |
| Dated: | November 6, 2000 |
| Trustor: | Sargent Ranch, LLC, a California limited liability company |
| Trustee: | First American Title Guaranty Company |
| Beneficiary: | Enderley Limited, an Isle of Man Corporation, as to an undivided 20.0000000% interest; ERG Inc., Retirement Trust, Burton O. Benson, Trustee, as to an undivided 6.6666666% interest; Cavalier Corp. Ltd., a Cayman Island Corporation, as to an undivided 5.0000000% interest; Joyelyn Sylvester Herail, Trustee, Herail Family Trust, dated May 19, 1990, as to an undivided 3.3333333% interest and First Blackhawk Financial Corporation, a California corporation, as to an undivided 63.3333333% interest |
| Recorded: | November 14, 2000, as Series No. 15458820, of Official Records |

An assignment of an undivided interest in the beneficial interest under said deed of trust which names

| | |
|---|---|
| As Assignor: | First Blackhawk Financial Corporation |
| As Assignee: | Nailder Investment Ltd., as to an undivided 13.33333333% interest; Goldfinger Investments, Ltd., a British Virgin Island Corporation, as to an undivided 3.80000000% interest |
| Recorded: | February 20, 2001, as Series No. 15564309, of Official Records |
| Re-recorded: | June 22, 2005, as Series No. 18434817, of Official Records |

An assignment of an undivided 2.33333333% interest in the beneficial interest under said deed of trust which names

| | |
|---|---|
| As Assignor: | First Blackhawk Financial Corporation |
| As Assignee: | Avilia Thompson, a Limited Partnership |
| Recorded: | February 20, 2001, as Series No. 15564310, of Official Records |
| Re-recorded: | June 22, 2005, as Series No. 18434818, of Official Records |

An assignment of an undivided 0.66666666% interest in the beneficial interest under said deed of trust which names

| | |
|---|---|
| As Assignor: | First Blackhawk Financial Corporation |
| As Assignee: | Baliwick Insurance Post Closing Coordinator Ltd. Cell 404 |
| Recorded: | August 9, 2001, as Series No. 15817637, of Official Records |

An assignment of an undivided 1.66666667% interest in the beneficial interest under said deed of trust which names

| | |
|---|---|
| As Assignor: | Thomas J. Bletcher |
| As Assignee: | First Blackhawk financial Corporation |
| Recorded: | November 8, 2001, as Series No. 15952635, of Official Records |

An assignment of an undivided 2.00000000% interest in the beneficial interest under said deed of trust which names

| | |
|---|---|
| As Assignor: | First Blackhawk Financial Corporation |
| As Assignee: | Goldfinger Investments, Ltd., a British Virgin Islands Corporation |
| Recorded: | November 16, 2001, as Series No. 15966255, of Official Records |

An assignment of an undivided 1.00000000% interest in the beneficial interest under said deed of trust which names

| | |
|---|---|
| As Assignor: | First Blackhawk Financial Corporation |

File No: 68141307

## SCHEDULE B – Continued

As Assignee:        Michael C. S. Thompson, Trustee of the Michael C. S. Thompson
                    Living Trust, dated 3/20/1995
Recorded:           June 22, 2005, as Series No. 18434819, of Official Records

An assignment of an undivided 5.00000000% interest in the beneficial interest under said deed
of trust which names
As Assignor:        First Blackhawk Financial Corporation
As Assignee:        Linkup Holdings, a Cayman Island Corporation
Recorded:           June 22, 2005, as Series No. 18434820, of Official Records

An assignment of an undivided  interest in the beneficial interest under said deed of trust which
names
As Assignor:        First Blackhawk Financial Corporation
As Assignee:        ERG, Inc., BOB Retirement Trust, Burton O. Benson, Trustee, as to
                    an undivided 3.33333333% interest; Cavalier Corp. Ltd., a Cayman
                    Island Corporation, as to an undivided 0.66666667% interest and
                    New Process Industries, Inc., as to an undivided 2.66666667%
                    interest
Recorded:           June 22, 2005, as Series No. 18434821, of Official Records

An assignment of an undivided 6.66666667% interest in the beneficial interest under said deed
of trust which names
As Assignor:        Bailiwick Insurance PCC Ltd., Cell 403
As Assignee:        Gibbs Hill Insurance Company (SAC) Ltd., Segregated Account
                    GH400/404
Recorded:           June 23, 2005, as Series No. 18436533, of Official Records

An assignment of an undivided 4.66666667% interest in the beneficial interest under said deed
of trust which names
As Assignor:        First Blackhawk Financial Corporation
As Assignee:        Enderley Limited, an Isle of Man Corporation
Recorded:           June 23, 2005, as Series No. 18436534, of Official Records

An assignment of an undivided 1.66666667% interest in the beneficial interest under said deed
of trust which names
As Assignor:        First Blackhawk Financial Corporation
As Assignee:        Michael C. S. Thompson, Trustee of the Michael C. S. Thompson
                    Living Trust, dated 3/20/1995
Recorded:           June 23, 2005, as Series No. 18436535, of Official Records

An assignment of an undivided 6.66666667% interest in the beneficial interest under said deed
of trust which names
As Assignor:        First Blackhawk Financial Corporation
As Assignee:        Shazara Services, Ltd., a British Virgin Island Corporation
Recorded:           June 23, 2005, as Series No. 18436536, of Official Records

An assignment of an undivided 3.33333333% interest in the beneficial interest under said deed
of trust which names
As Assignor:        First Blackhawk Financial Corporation
As Assignee:        Frederick Sylvester, Trustee of the Frederick and Elizabeth
                    Sylvester Trust, dated May 19, 1990
Recorded:           June 23, 2005, as Series No. 18436537, of Official Records

An assignment of an undivided 4.00000000% interest in the beneficial interest under said deed
of trust which names
As Assignor:        Gibbs Hill Insurance Co. (SAC) Ltd., Segregated Account
                    GH400/404

File No: 68141307

## SCHEDULE B - Continued

As Assignee:         First Blackhawk Financial Corporation, a California corporation
Recorded:             June 23, 2005, as Series No. 18436538, of Official Records

An assignment of an undivided 4.33333333% interest in the beneficial interest under said deed of trust which names

As Assignor:          First Blackhawk Financial Corporation
As Assignee:         Paul Pagnini, Trustee, Pagnini Family Trust, dated 7/16/79
Recorded:             June 23, 2005, as Series No. 18436539, of Official Records

An assignment of an undivided interest in the beneficial interest under said deed of trust which names

As Assignor:          First Blackhawk Financial Corporation
As Assignee:         ERG-BOB Retirement Trust, as to an undivided 2.00000000% interest; Gibbs Hill Insurance Company (SAC) Ltd. – Segregated Account GH400/403, as to an undivided 2.00000000% interest; ERG – Ford Retirement Trust, Burton O. Benson, Trustee, as to an undivided 0.66666667% interest; Eric B. Benson, a married man, as his sole and separate property, as to an undivided 0.66666667% interest; Mark D. Benson, a single man, as to an undivided 0.66666667% interest and Bradley D. Benson, a single man, as to an undivided 0.66666667% interest
Recorded:             June 23, 2005, Series No. 18436540, of Official Records

An assignment of an undivided 0.86666666% interest in the beneficial interest under said deed of trust which names

As Assignor:          First Blackhawk Financial Corporation
As Assignee:         Enderley Limited, an Isle of Man Corporation
Recorded:             August 23, 2005, as Series No. 18436541, of Official Records

File No: 68141307

## SCHEDULE B – Continued

50. A deed of trust to secure an indebtedness in the amount shown below, and any other
obligations secured thereby.

| | |
|---|---|
| Amount: | $3,000,000.00 |
| Dated: | October 1, 2003 |
| Trustor: | Sargent Ranch, LLC |
| Trustee: | First American Title Guaranty Co. |
| Beneficiary: | Norman I. Adams, IV, a single man, as to an undivided 16.66666666% interest; Mary B. Wilson, Trustee of the Mary B Wilson Living Trust, as to an undivided 9.99999999% interest; Steve and Lynn Mirassou, Trustee of the Steve and Lynn Mirassou Living Trust, as to an undivided 6.66666667% interest; Nancy Z. Weber, a widow, as to an undivided 6.00000000% interest; PENSCO Trust Company, Inc., Custodian, FBO Deanna Weber, Account #WE-174, as to an undivided 0.66666667% interest; Rick J. Rudd and Paula T. Rudd, Trustees U/D/T of the Rick J. Rudd and Paula T. Rudd 2003 Trust, dated January 21, 2003, as to an undivided 3.33333333% interest; PENSCO Trust Company, Inc., Custodian FBO Rick J. Rudd, Account #RU-110, as to an undivided 15.00000000% interest; PENSCO Trust Company, Inc., Custodian FBO Alfred B. Wolfers, Account #WO-160, as to an undivided 16.66666667% interest; PENSCO Trust Company, Inc., Custodian FBO William J. Beckett, Account #BE-328, as to an undivided 6.66666667% interest;  PENSCO Trust Company, Inc., Custodian FBO Richard H. Dubois, Account #DU-101, as to an undivided 6.66666667% interest; PENSCO Trust Company, Inc., Custodian FBO Kathleen B. Keith, Account #KE-174, as to an undivided 11.66666667% interest |
| Recorded: | October 28, 2003, Series No. 17442365, of Official Records |

An assignment of an undivided 18.33333333% interest in the beneficial interest under said
deed of trust which names

| | |
|---|---|
| As Assignor: | PENSCO Trust Company, Inc., Custodian FBO Rick Rudd and Paula Rudd, Trustees |
| As Assignee: | Frederick Sylvester, Trustee of the Frederick and Elizabeth Sylvester Trust, dated May 19, 1990 |
| Recorded: | September 13, 2005, as Series No. 18574413, of Official Records |

An assignment of an undivided 0.66666667% interest in the beneficial interest under said deed
of trust which names

| | |
|---|---|
| As Assignor: | PENSCO Trust Company, Inc., Custodian FBO Deana Weber, Account #WE-174 |
| As Assignee: | Carr Capital Partners LLCC |
| Recorded: | October 26, 2005, Series No. 18643048, of Official Records |
| Re-Recorded: | November 8, 2005, Series No. 18669300, of Official Records |

An assignment of an undivided 6.00000000% interest in the beneficial interest under said
deed of trust which names

| | |
|---|---|
| As Assignor: | Nancy Z. Weber |
| As Assignee: | Carr Capital Partners LLC |
| Recorded: | October 31, 2005, Series No. 18650348, of Official Records |