1  **WRITTEN DECISION - NOT FOR PUBLICATION**

ENTERED 5-17-11
FILED
MAY 17 2011
CLERK, U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>SARGENT RANCH, LLC,<br>A CALIFORNIA LIMITED COMPANY,<br><br>Debtor. | Case No. 10-00046-PB11<br><br>ORDER ON TRUSTEE'S<br>BORROWING MOTION |

Before the Court is the motion to authorize superpriority borrowing, filed by the Chapter 11 trustee. The trustee seeks to borrow the sum of $808,000, in two phases. The first would yield $350,000 and the second, if sequentially authorized would yield an additional $325,000. The remainder of the loan would constitute prepaid interest and fees. The term of the loan is for one year, at 11% interest, and a default rate of interest of 15%, after maturity if the loan is not sooner repaid. The proposed lender is an assignee of one of the creditors in this case, which claims to hold interest positions in both the first and second trust deeds on the property.

///

Section 364 of Title 11, United States Code, provides in relevant part:

> (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
>
> (A) the trustee is unable to obtain such credit otherwise; and
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
>
> (2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

A group of creditors secured by interests in the first trust deed (representing 14 - 18% of the total first trust deed creditors) oppose the Chapter 11 trustee's motion, arguing the interests of the first trust deed holders would be eroded by granting a priority lien over theirs without any adequate protection of their interest.

The Chapter 11 trustee is in an almost impossible position. This case was filed January 4, 2010. In April, 2010 the debtor tried to get approval of a superpriority priming lien, which the Court did not approve. Subsequently, because of the seeming overwhelming distrust in the case, the debtor sought to hire an outside company to pursue financing and developing a plan for exploitation of some or all of the debtor's contiguous 6400 acres of raw land. That did not accomplish the avowed goal, and on December 17, 2010 the parties present in open court stipulated to

appointment of a Chapter 11 trustee. A very experienced developer was selected by the United States Trustee and an order appointing him was signed by the Court.

The threshold problem has been, and remains that the estate has no cash in it to do anything. At the same time the parties and the Court wanted a Chapter 11 trustee to take charge, the trustee has not been provided with any of the necessary wherewithal to move the case toward any form of reorganization. And the threshold issue for the trustee has been to try to find out what the potential assets of the estate are. That takes funding for disinterested analysts and appraisers to assess. So the trustee and his counsel have worked hard to find funding to take those first steps which, seemingly, would inure to the benefit of all the creditors, including the first trust deed interest holders. Indeed, the trustee thought the structure of an agreement had been agreed upon, but apparently not.

The Chapter 11 trustee advances two arguments why the Court should approve borrowing on terms the same or better than those offered by Enderly's assignee. First, he argues that the senior secured creditors should be held to have consented by virtue of a majority not having timely filed opposition, and recognizing that under applicable California law and the applicable Operating Agreement a majority has the authority to act for the group. Since the majority have been silent, they should be deemed to have consented under the Court's Local Rules. The Court is loathe to so hold in the instant circumstances.

-3-

      The trustee's second argument is that obtaining expert analysis of remunerative uses to which the real property may be put enhances its value in virtually any direction because it moves the property closer to some sort of use, even if it rules out other theoretically possible uses. It is still an analysis someone else will not have to spend money to do in the future. Indeed, it is interesting to note that the proposed loan agreement describes as collateral not just the superpriority secured lien on the real property, but also the reports and analyses performed on the property.

      The Court believes there is support for and merit in the trustee's second argument. However, the record is silent on the extent to which, if at all, the value of the property will be increased quantitatively by borrowing to fund the analyses. Nor does the record show that the value of the property will be increased sufficiently to afford the senior secured creditors the adequate protection that § 364 requires.

      The Court is mindful that this case, which has been pending over 16 months, has not brought forth any third party, or any creditor or group of creditors, who asserts belief in the economic viability of this property. No one has stepped forward with any proposal to fund even the modest first steps the trustee proposes without all sorts of guarantees. To be sure, Enderly has made a proposal to loan $808,000 for one year at 11% interest, plus points and a commitment fee, but in addition Enderly wants a superpriority secured lien ahead of all others

-4-

1 in a property valued at the low end at over $9 million. So
2 Enderly would be oversecured approximately 12 times over. As
3 noted, the loan term would be one year, with prepaid interest
4 and, if not paid in full in one year, the default interest rate
5 of 15% kicks in. That, despite the record which indicates there
6 would be no cash flow from a sand quarry operation for over two
7 years even if the project were begun right now. And, on top of
8 that, Enderly wants a breakup fee of up to $20,000 if someone
9 else offers the estate a more preferable loan.
10 ///
11 ///
12 ///
13 ///
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///

          Based on all the foregoing, together with the stated opposition to the presently proposed loan, the Court will not approve the trustee's motion on its present terms. Given the age of this case, and the lack of cooperation and progress in support of a Chapter 11 trustee, who was appointed at the request of many of the parties who now handcuff him financially from being able to do anything to advance the case, the Court hereby gives notice that unless a borrowing agreement is reached in the interim, on June 20, 2011 at 4 p.m. this court will hear argument on its own motion to convert this case to one under Chapter 7. If any agreement is reached, it will not be approved by the Court if it includes any purported breakup fee. The Court believes Enderly acted prudently in waiting to prepare the loan documents until it appeared an agreement had been reached. Nevertheless, as Enderly has pointed out, it was not the stalking horse proposer, but rather offered more favorable terms than another. Breakup fees in this situation are not warranted.

          IT IS SO ORDERED.

          DATED: MAY 17 2011

                                        _____
                                        PETER W. BOWIE, Chief Judge
                                        United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re Case No.  10-00046-PB11

**CERTIFICATE OF MAILING**

The undersigned, a regularly appointed and qualified clerk in the Office of the United States Bankruptcy Court for the Southern District of California, at San Diego, hereby certifies that a true copy of the attached document, to wit:

>ORDER ON TRUSTEE'S
>BORROWING MOTION

was enclosed in a sealed envelope bearing the lawful frank of the Bankruptcy Judges and mailed to each of the parties at their respective address listed below:

See attached list.

Said envelope(s) containing such document were deposited by me in a regular United States mail box in the City of San Diego, in said district on May 17, 2011.

*Barbara J. Kelly*
Barbara J. Kelly, Judicial Assistant

Certificate of Mailing                                May 17, 2011
Case No. 10-00046-PB11                                Page 2


Paul J. Leeds, Esq.
Higgs, Fletcher, Mack LLP
401 West A Street, Suite 2600
San Diego, CA  92101-7910

Gustavo E. Bravo, Esq.
Smaha Law Group, APLC
7860 Mission Center Court, Suite 100
San Diego, CA  92108

Dan E. Chambers, Esq.
Troutman Sanders LLP
5 Park Plaza, Suite 1400
Irvine, CA  92614

William M. Rathbone, Esq.
Gordon & Rees LLP
101 West Broadway, Suite 1600
San Diego, CA  92101

Jeffrey J. Goodrich, Esq.
Goodrich & Associates
336 Bon Air Center, #335
Greenbrae, CA  94904

Mikel Bistrow, Esq.
Duane Morris LLP
101 West Broadway, Suite 900
San Diego, CA  92101

Victor A. Vilaplana, Esq.
Foley & Lardner
402 West Broadway, Suite 2100
San Diego, CA  92101

Robert E. Barnes, Esq.
The Bernhoft Law Firm
207 East Buffalo Street, Suite 600
Milwaukee, WI  53202

David A. Ortiz
Attorney for U.S. Trustee
402 West Broadway, Suite 600
San Diego, CA  92101